```
 1                     IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE NORTHERN DISTRICT OF TEXAS

 3                            DALLAS DIVISION

 4   UNITED STATES OF AMERICA,    ) Case No. 3:06-CR-369-R (01)
                                  )
 5           Government,          )
                                  ) DALLAS, TEXAS
 6   VERSUS                       )
                                  ) DECEMBER 20, 2007
 7   RONALD C. PEARSON,           )
                                  )
 8           Defendant.          ) 10:28 A.M.

 9

10                           VOLUME 1 OF 1
                         TRANSCRIPT OF SENTENCING
11              BEFORE THE HONORABLE REED O'CONNOR
                UNITED STATES DISTRICT COURT JUDGE
12

13   A P P E A R A N C E S:

14   FOR THE GOVERNMENT:      MR. PAUL YANOWITCH
                              UNITED STATES DEPARTMENT OF JUSTICE
15                            NORTHERN DISTRICT OF TEXAS
                              U.S. Courthouse, Third Floor
16                            Dallas, Texas  75242
                              Telephone:  214.659.8600
17
     FOR THE DEFENDANT:       MR. RANDY TAYLOR
18                            ATTORNEY AT LAW
                              1885 FM 514
19                            Yantis, Texas  75497
                              Telephone:  214.747.8794
20
     COURT REPORTER:          DEBRA G. SAENZ, CSR, RMR, CRR
21                            1100 Commerce Street, Room 1504
                              Dallas, Texas  75242
22                            Telephone:  214.753.2298
                              E-Mail: debbie.saenz@yahoo.com
23

24   Proceedings reported by mechanical stenography, transcript

25   produced by computer.
```

2

1                    I N D E X

2    PROCEEDING                                      PAGE

3    Objections Commenced.........................   3-6

4    Court's Findings.............................    6

5    Government's Motion for Downward Departure
         Court's Ruling followed by discussion......  6-10
6
     Statements on Sentencing
7      By Mr. Taylor..............................    12
       By the Defendant...........................    16
8      By Mr. Yanowitch...........................    19

9    Sentence of the Court........................    25

10   Government's Motion to Dismiss and Ruling.......  30

11   Reporter's Certificate.......................    33

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Debbie Saenz, CSR, RMR, CRR
United States District Court
(214) 753-2298

```
 1                  P R O C E E D I N G S

 2                 December 20, 2007 - 10:28 a.m.

 3          THE COURT:  The Court calls for sentencing Cause

 4   Number 3:06-CR-369, the United States of America versus Ronald

 5   Pearson.

 6          Mr. Pearson is represented by Mr. Taylor, Randy

 7   Taylor, a well-known member of the Dallas Bar.  Good to see

 8   you again.

 9          MR. TAYLOR:  Nice to see you, sir.

10          MR. YANOWITCH:  Paul Yanowitch for the Government,

11   Your Honor.

12          THE COURT:  How are you doing, Mr. Yanowitch?

13          MR. YANOWITCH:  Very well, thank you.

14          THE COURT:  Thank you for being here today.

15          Step up to the podium, please.

16          Are both parties ready to proceed?

17          MR. YANOWITCH:  Government is ready, Your Honor.

18          MR. TAYLOR:  Yes, Your Honor.

19          THE COURT:  Mr. Pearson, would you please

20   acknowledge your presence in court for the record by stating

21   your full name?

22          THE DEFENDANT:  Ronald Cameron Pearson.

23          THE COURT:  Mr. Pearson, you appeared before

24   Magistrate Judge Stickney on May 29, 2007, and pleaded guilty

25   to Count 1 of the indictment charging you with receipt of
```

1    child pornography through interstate and foreign commerce in

2    violation of 18 USC 2252A.

3           On that date, Judge Stickney found that your plea of

4    guilty was a knowing and voluntary plea supported by an

5    independent basis in fact containing each of the essential

6    elements of the offense.  You told him at that time that you

7    understood the elements of the offense, you agreed to the

8    accuracy of the factual resume, and admitted that you

9    committed all essential elements of the offense.

10          On June 11, 2007, Judge Buchmeyer entered an order

11   accepting your plea and adjudging you guilty of the crime

12   alleged in the indictment against you.  This plea of guilty

13   was taken pursuant to a plea agreement, and I have reviewed

14   the plea agreement and the charge to which you have pled

15   guilty, and I have determined that the charge adequately

16   reflects the seriousness of your actual offense behavior so

17   that accepting the plea agreement will not undermine the

18   statutory purposes of sentencing, all relevant conduct having

19   been taken into consideration in the calculation of the total

20   offense level.  Therefore, the plea agreement is accepted and

21   the judgment and sentence will be consistent with it.

22          Mr. Taylor, did you and your client receive in a

23   timely manner a copy of the presentence investigation report

24   as well as the addendum?

25          MR. TAYLOR:  Yes, sir.

1            THE COURT:  And did you carefully review that report

2      and that addendum with Mr. Pearson?

3            MR. TAYLOR:  Yes, sir.

4            THE COURT:  Did the Government receive it in a

5      timely fashion?

6            MR. YANOWITCH:  Yes, we did, Your Honor.

7            THE COURT:  I do not see any specific objections to

8      the presentence report, but I note that the addendum to the

9      presentence report indicates that the Court may consider

10     denying Mr. Pearson the adjustment for acceptance of

11     responsibility.

12            Now, I'm troubled, Mr. Pearson, by the fact that you

13     did go to the library and apparently used the computer at the

14     library, but your lawyer, Mr. Taylor, as did the Government,

15     filed documents addressing that issue, and I think your lawyer

16     probably put it best in his document about the true facts and

17     motivations and circumstances surrounding your going to the

18     library and your using that computer.

19            THE DEFENDANT:  That's correct.

20            THE COURT:  So while I'm troubled by that, I'm going

21     to follow the suggestions of your lawyer and the suggestions

22     of Mr. Yanowitch, and I'm not going to deny you acceptance of

23     responsibility.

24            Does the Government have any objection to my ruling

25     in that fashion?

1          MR. YANOWITCH:  No, Your Honor.

2          THE COURT:  Mr. Taylor, do you have any objection?

3          MR. TAYLOR:  Obviously not, Your Honor.

4          THE COURT:  Okay.  That being the case, I adopt the

5    fact findings in the presentence report as my own.  There

6    being no objections to the probation officer's conclusions set

7    forth in the presentence report as to the appropriate

8    guideline calculations, I adopt those conclusions and

9    determine that the appropriate guideline calculations are as

10   follows:

11         A total offense level of 30, a criminal history

12   category of I, an imprisonment range between 97 months and 121

13   months, a supervised release range of any term of years up to

14   life imprisonment, and a fine range of $17,500 to $175,000.

15         Now, the Government has filed a motion for downward

16   departure in this case, and I will grant the motion for

17   downward departure for the reasons that the Government stated

18   in its motion, but I would like to ask the Government some

19   questions about the recommended level of downward departure if

20   that's all right.

21         MR. YANOWITCH:  Yes, Your Honor, certainly.

22         THE COURT:  In the motion, you recommend that

23   Mr. Pearson receive a four-level downward departure; is that

24   correct?

25         MR. YANOWITCH:  That's correct.

1          THE COURT:  Okay.  Can you share with the Court the

2     factors you considered or the criteria you evaluated to make

3     the recommendation that four levels is the appropriate

4     departure, as opposed to ten levels, or as opposed to two

5     levels?

6          MR. YANOWITCH:  Certainly, Your Honor, as best as I

7     can articulate.  Initially, it is open and on the record that

8     Mr. Pearson came and proffered, after his arrest, came and

9     talked to the government and identified someone with whom he

10    had distributed and exchanged child pornography, a Mickey

11    George.

12         He gave us significant information about Mr. George,

13    enough to get a search warrant.  We executed a search warrant

14    of Mr. George's residence, which yielded -- through the

15    immigration and customs enforcement agency, which yielded

16    evidence which lead to an indictment of Mr. George, and

17    Mr. Pearson agreed to testify at trial.  And, eventually, just

18    shortly before trial, due I think in part to the fact that

19    Mr. Pearson would have testified, Mr. George pled guilty.

20         So, essentially, Mr. Pearson gave us somebody who

21    was a significant consumer of child pornography, and we think

22    something of a risk to the community based upon the evidence

23    we gathered in his -- during the course of his search, which

24    included what -- I don't want to overly glamorize it, but

25    might be considered almost a stalking tape of videotaping

1    young girls at public events, and a series of what I think the

2    agent and I considered to be rather disturbing images, which

3    tend to us to suggest that this individual may have posed a

4    pretty significant risk at some point to the community.

5           So I think Mr. Pearson deserves credit for taking

6    someone who was a major risk out of circulation as it were,

7    and eventually pleading guilty and not going to trial and

8    running that risk, since there are obviously at trials, as

9    Court knows, all sorts of dangers and risks, and so it was

10   basically that.

11          And I -- in determining the exact level to which

12   that corresponds, I can tell the Court that I'm relatively

13   new.  I have been here only a few years and not done that many

14   5Ks, so I went to my colleagues and supervisors and said, what

15   is this worth in a way, and we talked about it, and that was

16   what I thought reflected the level of his cooperation, the

17   danger -- or the benefit to us as a result of that

18   information.

19          And I should add that Mr. Pearson has also agreed

20   and was able to provide us information about another target of

21   an investigation, which is ongoing, and he has helped us

22   provide a little bit of information about that target and has

23   expressed willingness numerous times to do whatever he needs

24   to do in order to advance that investigation, including, if

25   necessary, acting as an agent of law enforcement.

1            The law enforcement agencies involved have made the

2      conclusion that this is not the appropriate time to go that

3      route with this particular subject, but I factored in

4      Mr. Pearson's willingness to go beyond the proffer and to act

5      on our behalf with regard to another subject, who represents

6      also a pretty significant risk to the community.

7            THE COURT:  Okay.  Give me one second, please.

8            MR. YANOWITCH:  Surely.

9            THE COURT:  So will Mr. Pearson be eligible for a

10      Rule 35 in the future, if that case is brought to fruition?

11            MR. YANOWITCH:  Your Honor, I've actually talked

12      about that with my supervisor and considered that.  The Rule

13      5K1, which is quite generous, I recognize, which is quite

14      generous, incorporates to a great degree -- incorporates

15      everything he's done so far and incorporated any testimony

16      that he was going to give in Mr. George's trial, and

17      Mr. George pled out at the last moment, but it also

18      incorporates his efforts today in anticipation of some

19      additional efforts, really, against another target.

20            I left open the possibility that if he acts on our

21      behalf in some capacity, and does a really significant degree

22      of effort and work on behalf of the Government, should it

23      arise, and that results in a prosecution and indictment -- and

24      successful prosecution of this individual, he might be

25      eligible for a small amount more, but this is an attempt

1   of -- pretty much resolved his cooperation with the

2   Government.

3           THE COURT:  Mr. Taylor, obviously I've granted the

4   motion, the Government's motion for downward departure, but I

5   wanted to give you an opportunity to speak on your views.

6           MR. TAYLOR:  Well, Judge, I hate to bring the death

7   down on Mr. Yanowitch's career probably by saying that he's

8   been fair and reasonable throughout these proceedings from the

9   first time that I have dealt with him up until today, and if

10  he has recommended it, I'm not going to quarrel with him about

11  it, sir.

12          THE COURT:  Well, that's probably -- people are

13  aware that you are a very fine trial lawyer and a prestigious

14  member of the Dallas Bar, and you are deserving of fair

15  treatment, so I'm glad to hear that.

16          MR. TAYLOR:  Thank you, sir.

17          THE COURT:  Mr. Taylor, before I move forward, if I

18  could just state one thing for you and your client's benefit.

19  I have read the transcript of the previous sentencing hearing

20  that Judge Buchmeyer conducted a couple of months ago, and

21  several individuals spoke at that proceeding on behalf of

22  Mr. Pearson, and Mr. Pearson was able to speak at that time as

23  well.

24          I have also read numerous letters that the two of

25  you, Mr. Taylor and your client, have sent to me, including

1    one that came in to me the first of December, I don't remember

2    the exact date, from Mr. Pearson, a handwritten letter from

3    Mr. Pearson, himself, and I've read those letters.

4            Those letters indicate to me that Mr. Pearson has a

5    wide level of support, at least in the Garland community, and

6    it extends out from the Garland community.  It's not limited

7    to the Garland community.  And, of course, those letters

8    indicate that his parents were wonderful people, and so you

9    have every right to be proud of your parents, Mr. Pearson.

10   They seemed like wonderful people to me.

11           Then I've also, in addition to the transcript and

12   the letters, I was also presented with a binder that is

13   entitled, Daily Diary from November 17th, '06, to the

14   present written, I think it's fair to say, by Mr. Pearson.

15   I've gone through that as well, more day-to-day detail, as

16   opposed to the letters, which were more expressions of

17   support, discussions of how they knew Mr. Pearson in the past.

18   This is more day-to-day detail of what Mr. Pearson has done on

19   a day-to-day basis for sometime.  So I just wanted to -- give

20   me a second, Mr. Pearson.

21           I just wanted, Mr. Taylor, you and your client to

22   know that the Court has already reviewed, read and reviewed

23   that.  And I want to turn to you, Mr. Taylor, next, but let me

24   just say, I am told that there will be a fire alarm at 11:00

25   a.m.  It's just a test, test only.  We are not going to

1    evacuate or leave the courtroom.  We're going to stay here and

2    work through these issues, but I just wanted to assure

3    everyone it's not a real fire.  Don't go running for the

4    exits.  It's just a test.

5           So with all of that said, Mr. Taylor, do you wish to

6    make any remarks on behalf of Mr. Pearson?

7           MR. TAYLOR:  Yes, sir, Judge.  I'll be brief in my

8    remarks.

9           Mr. Pearson stands before you today, Judge, as a

10   60-year-old individual.  He has absolutely no prior criminal

11   record whatsoever.  Judge Buchmeyer, and the transcript you

12   received from the hearing, he had 20 to 25 people here.  Judge

13   Buchmeyer wanted to I think limit the number of witnesses to

14   five, and we called professional-type witnesses, but he had

15   supporters from his church.

16          Ron has been a -- he has been a good citizen his

17   whole life.  He has worked at his church diligently, the

18   Methodist Church.  He has made sincere and genuine efforts to

19   help the people in the Philippines.  I journeyed to the

20   Philippines myself to see what he had done over there and was

21   pleasantly surprised at the good works he's done there and how

22   much the people in the Philippines thought of him.

23          After his arrest, he has sought professional help

24   from every source available to him on his own, out of his own

25   pocket, paid for it himself.  He's been treated by people that

1    specialize, professionals that specialize in the area of his

2    situation, for over a year now.

3         The diagnosis of Mr. Pearson has been always that he

4    is the lowest level -- at the lowest level of being a

5    pedophile, or involved in pedo- --

6         THE DEFENDANT:  Philia.

7         MR. TAYLOR:  Pedophilia involvement -- thank you --

8    involved in pedophilia.  There is absolutely no evidence

9    before this Court, sir, that he would be a reoffender or

10   somebody that would be back in front of you again, sir.

11        Mr. Pearson, as Mr. Yanowitch has pointed out, he

12   has cooperated with the Government in every way he can.  He

13   has volunteered through me and to Mr. Yanowitch directly to

14   cooperate as much as they can use him to help the situation

15   that we have ongoing in America.

16        He's -- as Mr. Yanowitch correctly pointed out, he's

17   assisted in bringing somebody else that was involved in the

18   same type or even maybe a more severe conduct than he was

19   before the Court.

20        He is -- you know, Judge, I guess in terms of being

21   worldly, I'm about as worldly as anybody that's going to be

22   before you.  As I was driving here to court today, I was

23   thinking how long I have been on my own.  I left home when I

24   was 17, and I have been looking after myself ever since then.

25             I have been on the road since I was 17.  I have been

1    to 42 foreign countries.  And it's easy for me to say, even

2    after having been exposed to as much life as I have, how could

3    anybody be drawn towards what Ron Pearson is charged with

4    being drawn towards?  How can you understand that?  There is

5    300 million people in America.  If only one-tenth of one

6    percent of the population of America is drawn to it, you know,

7    that's a whole lot of folks.

8           I'm completely computer illiterate, but I was asking

9    an associate of mine, where do you get this information off a

10   computer?  And we didn't pick child pornography, but I said,

11   give me an example, and he suggested to me to type into a

12   certain title.

13          On the computer that we had there in the office,

14   just the Internet, and he typed it in -- and because there is

15   ladies here I'll clean up a little bit what he typed in, but

16   it had to do with big busts.  And I was amazed at the number

17   of sites on the Internet where you could get such information.

18   I asked my associate, I said, can you get the same type of

19   information for child pedophilia or child pornography and he

20   said, yes, you can.

21          As I have been involved in this case, I have seen

22   where there are people out there that are advertising on the

23   Internet saying you've got a Constitutional right to have

24   this.  The Government is overstepping here.  And made it very

25   easy to get it.

1          I have read brochures that they send or information

2     that they send out where they say, if you'll just take and

3     come to us, we have never had a client busted, never had a

4     single person that we have sold or that we have serviced or

5     taken care of or dealt with, we have never had them busted

6     before.  You'll be safe with us.

7          All of this on the Internet now is beyond my

8     comprehension, but I'm the old man.  That doesn't excuse Ron

9     Pearson for what he did, and it doesn't deny that the law says

10    you can't do that, but I ask the Court to take into

11    consideration you got somebody here before you that's 60 years

12    old that has lead a good moral life his whole life.  And

13    whether or not this was hard-wired into him on the day of his

14    birth, or whether or not it's something that he acquired over

15    a long period of time, that's open for debate and has been

16    debated by lots of folks that you see on the news every night,

17    CNN and Fox and all those places, all those sites.

18         But I suggest to the Court that if you follow the

19    guidelines in the case, that the appropriate sentence, all

20    things considered, would be at the lower end of the

21    guidelines.  Thank you very much for your consideration,

22    Judge.

23         THE COURT:  Thank you, Mr. Taylor.

24         Mr. Pearson, do you wish to speak on your behalf or

25    present information in mitigation of your sentence?

1           THE DEFENDANT:  Yes, Your Honor, I would briefly, if

2      I'm allowed.

3           THE COURT:  Yes.

4           THE DEFENDANT:  And you may have already heard some

5      of this with the transcript, but I would like to restate a few

6      things.  After -- I'm an only child.  After my parents -- my

7      second -- my sole surviving parent's death, I was in a great

8      depression.  I began surfing the Internet at home.  And I

9      began looking at a lot of pornography, legal pornography.

10     Legal, I want to emphasize that.  Nothing really to be proud

11     about, but that's what I was looking at.

12          One day out of the blue I received an unsolicited

13     e-mail, and I know that God gave me a brain and it's my own

14     fault for the poor judgment that I used, but I signed onto

15     that site.  And for some reason, I began signing onto

16     additional sites along with regular pornography sites.

17          I knew that it wasn't -- it actually just -- I

18     enjoyed it, but by the same token, it bothered me at the same

19     time.  I don't know exactly how to describe that.  And maybe

20     even more important, in my opinion, is that I met this other

21     individual alluded to earlier, and I allowed him into my home,

22     very foolishly, and allowed him just to surf using my

23     computer, of course, and copy pictures onto CDs.

24          And he said, on more than one occasion, that, you

25     know, not to divulge that, that he is a weapons collector, and

1    I was afraid of him, quite honestly, but he seemed like sort

2    of a nice guy in some ways.  He said, you know, I have to have

3    images -- you know, I'm not going to do this unless I get to

4    keep a duplicate set.

5           And I told him on more than one occasion that he was

6    spending too much time at my house.  And even more important,

7    I also said that he was copying things that I did not want at

8    all.  His response was always, well, I'll just come back and

9    delete it.  But like my attorney, I'm very computer ignorant,

10   and I just thought that if you hit a button and deleted it,

11   that it was gone and that was all I had to worry about.  Of

12   course, I found out later that that's not is the case.

13          And I'm very, very remorseful and regretful that I

14   was foolish enough and stupid enough to let this person into

15   my home.  I've lead a good life.  This has already been

16   pointed out.  I've helped the prosecutor, Mr. Yanowitch, in

17   any way I can and have offered to do more in any way I can.

18          In all of my professional -- I'm speaking about

19   Dr. Crowder, my original psychiatrist.  He was the forensic

20   psychiatrist.  I was under no obligation to go to him, but I

21   went to him on my own.  He wrote what I thought, I'm sure it's

22   written very professionally, and stated his position on prison

23   working against me and asking for probation.

24          The same thing -- and he referred me to Dr. Lewis,

25   who is, as far as I can tell, the preeminent sex therapist

1     here in Dallas.  I have been seeing Dr. Lewis now for one

2     year, every week for one year in small groups.  I have made

3     tremendous progress with Dr. Lewis.

4              I'm also -- I'm also seeing Dr. Stephanie Hines for

5     my medicine.  She wrote a very supportive letter.  And my own

6     family physician, Dr. John C. Brooks, has written more than

7     one very supportive letter.

8              Your Honor, prison, I'm not ashamed to say that it

9     scares me very much.  I have heard about things happening to

10    people and I'm not a large person.  I just want to be able to

11    please continue my weekly sessions with Dr. Lewis.  I've made

12    great strides with him, and I would very much appreciate if

13    you would just consider in some way that possibility because

14    I'm scared.  And I mean, why isn't it such a good thing?  I've

15    made tremendous progress.

16             I know there are groups in prison, but it's nothing

17    like small groups to work with people, and I've accomplished a

18    tremendous amount, as he has stated in several letters of his

19    own, which I'm sure that you have read.

20             I know this is out of the ordinary, but I'm hoping

21    that this might be one situation that you would please

22    consider -- I don't care what sort of restrictions are placed

23    on me.  I have already been on home confinement for a year

24    with a monitor, but I'm asking you to please consider, at

25    least consider probation for me.  I don't know if it's

Debbie Saenz, CSR, RMR, CRR
United States District Court
(214) 753-2298

1    possible, but that is my humble request.

2              THE COURT:  Thank you, Mr. Pearson.

3              Mr. Taylor -- is everyone left in the gallery here

4    on behalf of Mr. Pearson?

5              MR. TAYLOR:  Over here on your left, sir.

6              THE DEFENDANT:  And the other side also.

7              THE COURT:  Okay.  Thank you.  Thank you all for

8    being here.  It's very important.

9              All right.  Does the Government wish to be heard?

10             MR. YANOWITCH:  Just very briefly, Your Honor.  I

11   don't want to -- just a few points.  I don't want to take away

12   from Mr. Pearson's good works, his otherwise moral and

13   upstanding life, his enormous support, his brave -- I think

14   you give credit where it's due, brave conduct of

15   self-reporting to members of his community in making an effort

16   to deal with his problem and with his conduct.  These are

17   certainly positive characteristics to be given credit for.

18             The Government's position, Your Honor, is that

19   probation is not appropriate and that a guideline sentence is.

20   And very briefly, Your Honor, it's important I think to note

21   that Mr. Pearson's use and consumption of these materials was

22   not an isolated casual incident.  The Court has seen the

23   presentence report.  The number of images, the duration of the

24   use of the images, and the types of images.  So this is a

25   long-standing use of these materials.

1          Number two, I think a sentence of probation or

2     anything below the guidelines really would fail to reflect the

3     necessary deterrents and respect for the law that is one of

4     the factors in 3553(a).

5          Mr. Taylor remarked about essentially the

6     ubiquitousness and the epidemic we face, the ubiquitousness of

7     this material on the Internet, and the epidemic we face of

8     these materials.  And as we've talked and tried to tell

9     Mr. Pearson, and as the cases for the last 30 years out of the

10    Supreme Court, beginning with Ferber and up to this date, and

11    through the Fifth Circuit, reflect the possession, the

12    receipt, the distribution of these materials is incredibly

13    harmful to society, precisely because it perpetuates this

14    market, and because, at the end, are victims who are being

15    sexually abused.

16         And so the continued use of these materials, as

17    Mr. Pearson said, soliciting these materials, finding them

18    out, using them, has perpetuated this harm to society, and I

19    think that has to be reflected, that deterrents need to be

20    there, and that respect for the law, and then a recognition of

21    the harm done needs to be there, and is not validated or

22    furthered, would be an appropriate word I think, through the

23    probation.

24         Lastly, I think that Mr. Pearson has made a genuine

25    effort.  From all the evidence that I have seen, I do believe

1    he's made an effort, a sincere effort, to deal with this and

2    going to the various physicians and psychologists and

3    continuing with treatment quite diligently and, as I said,

4    self-reporting to the members of the community so that they

5    could support him and ensure that he deals with this in an

6    open manner.

7         However, I think under the Fifth Circuit law, and

8    particularly I'm citing to Perrin, United States versus

9    Perrin, which is 478 F.3d 672, which is a February 2007 case

10   from the Fifth Circuit, essentially said, in part, there is no

11   super acceptance of responsibility; that a defendant's efforts

12   toward counsel -- and quite specifically, that case was

13   another child pornography case where defendant had made

14   efforts to get counseling on his own -- that these efforts are

15   part of what's acceptance of responsibility.  They go into the

16   acceptance of responsibility.  And there really isn't, under

17   the guidelines, this super acceptance of responsibility, which

18   justifies an additional downward departure.

19        Now, I recognize after Booker and the last set of

20   cases in the last couple of months, the extent to which a

21   parent is seen, you know, which it has to be refracted through

22   subrhythm (phonetic), I'm not quite sure, but I think it still

23   stands for the proposition that the Fifth Circuit believes

24   that that kind of conduct is already accounted for when the

25   Court looks at the guidelines and establishes that acceptance

1    of responsibility.

2         I think -- I won't belabor things, Your Honor, just

3    one last point, which is, I know it's understandable for

4    Mr. Pearson to get up and blame Mr. George and talk about the

5    ubiquity to stuff and the access to the Internet is simple

6    access, but I've talked to Mr. Pearson about this, and I want

7    to make sure that it's on the record here, that this is not

8    about Mr. George, and it's not about how easy it is to get

9    child pornography on the Internet.  That's the point of this

10   crime.

11        It's about the fact that Mr. Pearson deliberately

12   solicited this material, sought them out, used them, kept

13   them.  He kept them for years.  That's the point.  It's not

14   about letting Mr. George into his house.  It's about his

15   decision, his solicitation of materials, his decision to keep

16   these materials.  And I want to make the sure the Court does

17   not belabor -- I don't believe the Court is belaboring under

18   this conception, but I believe Mr. Pearson did mention -- and

19   his remarks surely are sincere and heartfelt, and I know that,

20   but he did mention that he had some concern about whether

21   things were deleted on a computer or not deleted on a

22   computer.

23        I think the Court knows from the presentence report

24   here that the law enforcement agents, Special Agent Hudson

25   from the Immigration and Customs Enforcement and his

Debbie Saenz, CSR, RMR, CRR
United States District Court
(214) 753-2298

1    colleagues, found numerous disks, 20 disks, more.  The Court

2    knows the number of images.  So this wasn't a matter of

3    forensically finding something that had been deleted.  That's

4    not this case.  I just want to make sure that's clear.

5              Ultimately, Your Honor, I appreciate the time the

6    Court has given.  I believe that the guidelines do reflect the

7    best balance of the factors in section 3553(a).  I don't see

8    any factor here, based upon my analysis of the evidence, that

9    identifies this, I guess in the old parlance, as being outside

10   the heartland of the guidelines.

11             And so the Court would recommend -- my apologies --

12   the Government would recommend that the Court impose a

13   sentence within the guidelines.  The Government does not have

14   any objection to any particular sentence within the

15   guidelines, but we believe the guideline range is appropriate

16   in this case.  Thank you.

17             THE COURT:  Thank you, and thank you both sides.

18   Let me do one housekeeping measure.  I had mentioned earlier

19   that the total offense level was 30, the criminal history

20   category was I, the imprisonment range was 97 to 121 months,

21   supervised release range was any term of years up to life

22   imprisonment, and a fine range was $17,500 to $175,000.  What

23   I did not do was reflect the Court's granting of the

24   Government's motion for downward departure, and the granting

25   of the four-level decrease pursuant to that motion for

1    downward departure.

2              In that instance, the total offense level then

3    becomes a total offense level of 26, with an imprisonment

4    range between 63 and 78 months.

5              Is that right, Mr. Yanowitch and Mr. Taylor?

6              MR. YANOWITCH:  That comports with my calculations,

7    Your Honor.

8              THE COURT:  Okay.

9              PROBATION OFFICER:  Your Honor, I apologize, with

10   the total offense level of 30, the fine guideline range is

11   15,000 to $150,000.

12             THE COURT:  With the downward departure, it would

13   be --

14             PROBATION OFFICER:  No, just with the total offense

15   level of 30, and then we don't consider the departure for the

16   fine.

17             THE COURT:  All right.  So the total offense level

18   of -- so for the total offense level of 30, the fine range is

19   what again?

20             PROBATION OFFICER:  15,000 to $150,000.

21             THE COURT:  Thank you.  But in terms of the downward

22   departure of four levels to the total offense level of 26, the

23   guideline imprisonment range would be 63 to 78 months?

24             PROBATION OFFICER:  Yes, sir.

25             THE COURT:  Okay.  So, out of an abundance of

1    caution, let me go through that again.

2              Before the Court granted the downward departure, the

3    total offense level is 30, criminal history category of I,

4    imprisonment range 97 to 121 months, supervised release range

5    of any term of years up to life imprisonment, and a fine range

6    of 50,000 to $150,000.

7              The Court has granted the Government's downward

8    departure motion and will depart downward four levels.  The

9    new total offense level will be an offense level of 26, an

10   imprisonment range of 63 to 78 months.

11             Does either side have any objections to that?

12             MR. YANOWITCH:  The Government does not, Your Honor.

13             MR. TAYLOR:  No, Your Honor.

14             THE COURT:  Okay.  I'm sorry about that.

15             I will now state the sentence determined pursuant to

16   Title 18 USC 3553(a), treating the sentencing guidelines

17   issued by the Sentencing Commission pursuant to Title 28 USC

18   994(a)(1) as advisory only under U.S. v. Booker, 125 Supreme

19   Court 738, 2005.

20             In arriving at a reasonable sentence, I have taken

21   into account primarily the conduct admitted by the defendant

22   in the factual resume and those matters required to be

23   considered by 3553(a).  The attorneys will have a final chance

24   to make legal objections before sentence is finally imposed.

25             It is the judgment of the Court that the defendant

1    Ronald C. Pearson is hereby committed to the Federal Bureau of

2    Prisons for a term of 70 months.

3         It is ordered that upon release from imprisonment,

4    the defendant shall be placed on supervised release for life.

5    It is further ordered that upon release from imprisonment, the

6    defendant shall comply with the standard conditions contained

7    in this judgment and shall comply with the mandatory and

8    special conditions stated herein.

9         Number one, the defendant shall not commit another

10   federal state or local crime.

11        Number two, the defendant shall not illegally

12   possess controlled substances.

13        Number three, the defendant shall cooperate in the

14   collection of DNA as directed by the probation officer.

15        Number four, the defendant shall not possess a

16   firearm, ammunition, destructive device, or any other

17   dangerous weapon.

18        Number five, the defendant shall report in person to

19   the U.S. Probation Office in the district to which the

20   defendant is released within 72 hours of release from the

21   custody of the Federal Bureau of Prisons.

22        Number six, the mandatory drug testing condition is

23   suspended based on the Court's determination that the

24   defendant poses a low risk for future substance abuse.

25        Number seven, the defendant shall participate in sex

```
 1    offender treatment services as directed by the probation
 2    officer until successfully discharged.  The services may
 3    include psychophysiological testing to monitor the defendant's
 4    compliance, treatment, progress, and risk to the community.
 5    The defendant shall contribute to the cost of services
 6    rendered at a rate of at least $15 per month.
 7            The defendant shall not have any form of
 8    unsupervised contact with minors under the age of 18 at any
 9    location, including but not limited to the defendant's
10    residence, place of employment, and public places where minors
11    frequent or congregate without prior permission of the
12    probation officer.
13            The defendant shall neither possess nor have under
14    his control any pornographic, sexually oriented, or sexually
15    stimulating materials, including visual, auditory, telephonic
16    or electronic media, computer programs or services.
17            The defendant shall not patronize anyplace where
18    such material or entertainment is available.
19            The defendant shall not use any sex-related
20    telephone numbers.
21            The defendant shall register with state and local
22    law enforcement as directed by the probation officer in each
23    jurisdiction where the defendant resides, is employed, and is
24    a student.
25            The defendant shall provide all information required
```

1    in accordance with state registration guidelines.  Initial

2    registration shall be completed within three business days

3    after release from confinement.

4         The defendant shall provide written verification of

5    registration to the probation officer within three business

6    days following registration.  This registration shall be

7    renewed as required by the defendant's assigned tier.

8         The defendant shall, no later than three business

9    days after each change of name, residence, employment, or

10   student status, appear in person in at least one jurisdiction

11   and inform that jurisdiction of all changes in the information

12   required in the sex offender registry.

13        The defendant shall not date or befriend anyone who

14   has children under the age of 18, unless approved in advance

15   by the probation officer.

16        Number twelve, the defendant shall obtain approval

17   of the probation officer prior to a change in residence or

18   living situation.

19        Number thirteen, the defendant shall submit to a

20   search of his person, property, house, vehicle, papers,

21   computer, and other electronic communication or data storage

22   devices or media at any time, with or without a warrant, by

23   any law enforcement officer or probation officer who has

24   reasonable suspicion concerning unlawful conduct or a

25   violation of a condition of supervised release.  Any such

1    items found may be seized by the probation officer.

2         The defendant shall not work as a teacher or a tutor

3    directly or indirectly.

4         The defendant shall not be employed to work as a

5    nurse or as a home healthcare worker without the probation

6    officer's approval.

7         It is further ordered that the defendant pay a

8    special assessment of $100.

9         In imposing this sentence, as I stated, the Court

10   has taken into account everything under the law that the Court

11   is required to do.  I believe this sentence -- I believe this

12   sentence, given the severity of the nature of this crime,

13   including the number of images, the acts depicted in many of

14   the images involving infants, preschoolers, prepubescents, and

15   early teens in bondage and in other sex acts justifies the

16   sentence that I have given here.

17        I have also given weight to the statements of some

18   of the children who have allowed their statements to be

19   presented to the probation officer and have been included in

20   the presentence report, those children who were depicted in

21   some of the images, as well as some of those parents who also

22   provided statements.

23        Countering these considerations, I have considered

24   the broad support Mr. Pearson has in the community and his

25   cooperation with the Government in reaching a sentence -- in

```
 1    reaching the sentence that I have just stated.  If I could

 2    have just one minute, please.

 3              (Pause in proceedings)

 4              Given everything that I have said, I believe that

 5    this sentence is sufficient but not greater than necessary to

 6    serve the purposes of sentencing.  I have now stated the

 7    sentence.  Is there any reason why sentence should not be

 8    imposed, Mr. Yanowitch?

 9              MR. YANOWITCH:  None.

10              THE COURT:  Mr. Taylor?

11              MR. TAYLOR:  No, sir.

12              THE COURT:  Then I'll order the sentence imposed as

13    stated.

14              Mr. Yanowitch, does the Government have a motion?

15              MR. YANOWITCH:  The Government moves to dismiss all

16    the remaining counts of the indictment, Your Honor.

17              MR. TAYLOR:  No objection, Your Honor.

18              THE COURT:  That motion will be granted.

19              Mr. Pearson, you have waived the right to appeal

20    your sentence and to complain of it in a collateral attack.

21    However, you have reserved, from that waiver, the right to

22    appeal a sentence exceeding the maximum statutory punishment,

23    any arithmetic error in sentencing, a challenge to the

24    voluntariness of your plea, or your appellate waiver, or the

25    ineffective assistance of counsel.  If you decide to appeal,
```

1    you have the right to apply for leave to appeal in forma

2    pauperis, if you are unable to pay is the cost of an appeal.

3           Mr. Pearson, do you understand your appellate rights

4    as I've just outlined to you?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  And do you understand your right to

7    proceed in forma pauperis, if you qualify?

8           THE DEFENDANT:  That's correct.

9           THE COURT:  Okay.  Is there anything -- let me take

10   up the issue of custody for Mr. Pearson pending execution of

11   the sentence.

12          It's my belief that it is the better course of

13   action in this case that Mr. Pearson be remanded to custody

14   immediately, and I'll order him remanded to the marshal in

15   this district to begin serving his sentence.

16          Is there anything else to take up from either side?

17          MR. TAYLOR:  Judge, I would ask that you use the

18   powers that federal judges possess to recommend to the federal

19   prison system that he be in Seagoville, if possible.

20          He's grown up and lived his entire life in the

21   metroplex area, and he has numerous, as you've seen here, and

22   from today and from the gallery, and from Judge Buchmeyer's

23   transcript, the number of people here that have an interest in

24   him.

25          THE COURT:  I think Mr. Taylor's points are well

1    taken, and I am going to follow Mr. Taylor's recommendation

2    and will make that recommendation and ask that it be

3    reflected.

4         Mr. Taylor, as you know, that will be my

5    recommendation to the Bureau of Prisons.

6         MR. TAYLOR:  Yes.

7         THE COURT:  They have almost complete control of

8    their classification decisions, but I think your point is well

9    taken and they would be advised to follow it.

10        MR. TAYLOR:  I found that when federal judges

11   recommend it, people usually listen.

12        THE COURT:  And I do that.  And with nothing else,

13   court is now adjourned.

14        (End of Proceedings)

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2          I, Debra G. Saenz, CSR, RMR, CRR, certify that the

 3    foregoing is a true and correct transcript from the record

 4    of proceedings in the foregoing entitled matter.

 5          I further certify that the transcript fees format

 6    comply with those prescribed by the Court and the Judicial

 7    Conference of the United States.

 8          Signed this 12th day of October, 2008.

 9

10                                   /s/ Debra G. Saenz

11                                   DEBRA G. SAENZ, CSR, RMR, CRR
                                     Texas CSR No. 3158
12                                   Official Court Reporter
                                     The Northern District of Texas
13                                   Dallas Division

14

15    CSR Expires:        12/31/09

16    Business Address:   1100 Commerce Street, Room 1504
                          Dallas, Texas  75242
17

18    Telephone:          214.753.2298

19    E-Mail Address:     debbie.saenz@yahoo.com

20

21

22

23

24

25
```