ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 1 2012

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | Case No. 3:06-CR-369-R |
| | § | |
| | § | |
| RONALD C. PEARSON, | § | |
| | § | |
| Defendant-Movant. | § | |
| | § | |
| | § | |
| | § | |

VERIFIED MOTION FOR MODIFICATION OF
SPECIAL TERMS OF SUPERVISED RELEASE

COMES NOW Ronald C. Pearson, Movant Pro Se, and approaching the completiton of his sentence of incarceration in the near term, respectfully requests the Court, pursuant to 18 U.S.C. § 3583(e)(2), to exercise its discretion, based upon the inherent power of the Court and Defendant's change of circumstances, to modify the terms and conditions of supervised release originally ordered at sentencing.  In support of said motion Defendant would show the Court:

1).  That as shown in Exhibits A, B, C, and D, the Defendant has made the best use of his time in prison and has comported himself without incident by continuing and participating in psychological treatment and therapy as

originally recommended by Clinical and Forensic Psychologist Franklin D. Lewis through the Federal Sex Offender Treatment Program (SOMP) and the Federal Victim Impact Program.  See Exhibits B and C.

2).  That he maintains a clear institutional record as shown by his most recent progress report.  See Exhibit D.

3).  That based upon changed circumstances in the life of the Defendant and the small likelihood of recidivism in the form of a sexual reoffense, (See Exhibit E) the imposition of certain special conditions of supervised release are unnecessary in Defendant's case to protect the public; further, that others of the conditions remain viable to assist the offender's transition back into society and meet safety concerns.

4).  That Special Condition 1 requires the Defendant to undergo sex offender treatment services including psycho-physiological testing.  Defendant asks the Court to modify Special Condition 1 to exclude Abel testing and penile plethysmograph examination from that treatment regimen specified in the discussion listed in the accompanying memorandum of law.

5).  That Special Condition 2 requires the Defendant to not have any form of unsupervised contact with minors under the age of 18 without prior permission of the Probation Officer.  Defendant asks the Court to modify Special Condition 2 to exclude casual contact with minors in public such that the Defendant may shop at the mall, go to the grocery store,

attend public events, travel or use mass transit and other public facilities where inadvertant contact may occur.

6).   That the Defendant is prohibited under Special Condition 3 from possessing or "having under his control pornographic, sexually oriented or sexually stimulating materials."  Defendant asks that possession of a television and the viewing of television programs, mainstream adult literature and adult heterosexual erotic materials be exempted from the terms of Special Condition 3.

7).   That the Defendant under Special Condition 5 cannot date or befriend anyone who has children under the age of 18, unless approved in advance by the U.S. Probation Officer.  As Defendant, nearly 65, wishes to establish companionship relations with an adult woman, and conceivably establish a marital and family relationship, and because society's interests can be protected by less drastic means including unannounced visits to Defendant's residence, Defendant asks the Court to delete Special Condition 5, while retaining Special Conditions 4, 6, and 7 as sufficient to protect the public welfare.

8).   That Special Condition 8 ia an occupational restriction and blanket ban against direct or indirect work as a teacher or tutor.  Defendant in the future may need to supplement his income and would like the opportunity to teach and/or tutor adults.  Defendant's circumstances have changed and he asks that Special Conditon 8 be amended to allow employment teaching adults.

9). Special Condition 9 poses an occupationl restriction from working as a nurse or home health care worker with his Probation Officer's approval. As circumstances have changed and Defendant may need to supplement his income in the future, Defendant asks the Court to modify Special Condition 9 to exempt nursing or home health care services for adult patients from Special Condition 9.

10). That Defendant tenders these requests in good faith so that he will be better advised as to what conduct is prohibited and what is allowed during the term of his supervised release and so that he can successfully transition back into society and return to his family home in Garland, Texas.

11). The Defendant argues that the above modifications would be sufficient but not greater than is necessary for the protection of society and would still promote the public welfare.

WHEREFORE, Movant Pearson requests that the Court exercise its inherent discretionary power under 18 U.S.C. § 3583(e)(2) and grant the above modifications to his Special Conditions of Supervised Release.

Respectfully submitted,

Ronald C. Pearson, Pro Se
Reg. No. 36037-177
F.C.I. Seagoville
P.O. Box 9000
Seagoville, Texas  75159-9000

## AFFIRMATION

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct.  Executed on _April 26_ , 2012.

_Ronald C. Pearson_
Ronald C. Pearson


## CERTIFICATE (PROOF) OF SERVICE

I hereby certify that on this 26th day of _April_ , 2012 I deposited the original and suitable copies of Appellant's "Verified Motion for Modification of Special Terms of Supervised Release" in the prison institutional legal mail system, first-class postage prepaid, addressed to:

        One (1) original and two (2) copies to:

                Clerk, U.S. District Courthouse
                ~~for the Fifth Circuit~~ error (R?)
                Northern District of Texas
                Dallas Division
                1100 Commerce Street
                Dallas, Texas  75242

                        AND

        One (1) copy to:

                U.S. Attorneys Office
                Northern District of Texas
                1100 Commerce Street
                Dallas, Texas  75242

_Ronald C. Pearson_
Ronald C. Pearson



36037-177

FCI

P.C. Box 9000

Seagoville, TX

75159-9000

United States v Pearson

Case No. 3:06-cr-3698

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
www.usps.gov

USPS TRACKING NUMBER

9502 5105 4875 2118 3596 11

First
class

RECEIVED
MAY -1 2012
CLERK, U.S. DIST. COURT
NORTHERN DISTRICT OF TEXAS

Clerk, U.S. District Courthouse
Earle Cabell Federal Building
1100 Commerce Street
Dallas, Texas

75242

U.S. POSTAGE
SEAGOVILLE, TX
$0.00

EXHIBIT A

## LEWIS and ASSOCIATES

7557 RAMBLER ROAD
SUITE 711
DALLAS, TEXAS 75231
214-363-8391

FRANKLIN D. LEWIS, Ph.D.
CLINICAL PSYCHOLOGIST

October 23, 2007                                    **DRAFT**
Mr. Paul Yanowitch
Assistant U.S. Attorney
Northern District of Texas
1100 Commerce, 3rd Fl.          Fax No.  (214) 767-2846

Re  *United States v. Ronald Pearson*   No. 3:06-CR-369-R

Dear Mr. Yanowitch:

Mr. Ron Pearson has asked that I send directly to you a progress report regarding his participation in my Sex Offender Treatment Program. Mr. Pearson was referred for treatment by Dr. Jay Crowder, M.D. Dr. Crowder had seen him for an evaluation and subsequently he was placed on anti-anxiety and anti-depressant medications which he is still taking. Following the administration of psychological tests at my office in December, Mr. Pearson was accepted for Sex Offender Group Treatment and his first session was January 3, 2007. He has now been seen for *thirty seven* Group sessions and he continues to show good progress. He is required to do *homework assignments* and to present his assignments in Group. His current assignment is to read the book *Untangling the Web* and he has completed reading it will present his review at the next Group meeting on October 23rd.

Mr. Pearson has often expressed in Group his desire and intention of assisting in *any way he can* authorities in the criminal justice system in their attempt to address the issue of child pornography and to bring to justice those who violate the laws. In short, Mr. Pearson continues to be in compliance with treatment goals and objectives and he fully accepts responsibility for his criminal offense. In closing, it continues to be my professional opinion that Mr. Pearson is a good candidate for probation and I believe that he will assist federal, state and local authorities if given that opportunity. In closing, if I can be of any further assistance to you, please let me know.

Sincerely,

Franklin D. Lewis, Ph.D., LSOTP
Clinical and Forensic Psychologist
Licensed Sex Offender Treatment Provider

FCI Seagoville, TX

# Certificate of Achievement

*awarded to:*

**Pearson, Ronald**

36037-177

*For successful completion of:*

*Non-residential Sex Offender Treatment Program*

**July 27, 2009 – July 27, 2010**

7/27/10
_____
*Date*

_____
*Dr. Shaddock, SOMP Coordinator*

EXHIBIT C

Case 3:16-cr-00260-L   Document 68   Filed 08/01/17   Page 9 of 78   PageID 695

# Federal Correctional Institution
## Seagoville, Texas

# Victim Impact Program

To the whole world you may be just one person,
but to one person you are the world.
FCI Seagoville Victim Impact Program

------ Presented To ------

# Ronald Pearson

May 6, 2008



Joe Baker, Facilitator
FCI Seagoville, Texas

Lisa Jordan, Facilitator
FCI Seagoville, Texas



EXHIBIT D

# INMATE SKILLS DEVELOPMENT PLAN

# Progress Report: 01-23-2012



| | | | |
|---|---|---|---|
| **Name:** | PEARSON, RONALD C | **Institution:** | SEAGOVILLE FCI |
| **Register Number:** | 36037-177 | | 2113 NORTH HWY 175 |
| **Security/Custody:** | LOW/IN | | SEAGOVILLE, TX 75159 |
| **Projected Release:** | 11-21-2012 / GCT REL | **Telephone:** | (972) 287-2911 |
| | | **Fax:** | 700-749-0011 |

| | | | |
|---|---|---|---|
| **Next Review Date:** | 04-21-2012 | **Driver's License/State:** | 0571739 / TX |
| **Next Custody Review Date:** | 06-04-2012 | **FBI Number:** | 852189NC6 |
| **Age/DOB/Sex:** | 64 / 05-09-1947 / M | **SSN:** | 466844846 |
| **CIM Status:** | N | **DCDC Number:** | |
| | | **INS Number:** | |
| | | **PDID Number:** | |
| | | **Other IDs:** | |

| | | | |
|---|---|---|---|
| **Release Residence:** | Ronald Pearson, Self<br>1132 ROCK CREEK DRIVE<br>GARLAND, TX 75040 | **Release Employer:** | To be secured upon release<br>*[Address]* |
| | | **Contact** | *[POC]* |
| **Telephone:** | *[Phone]* | **Telephone:** | *[Phone]* |

| | | | |
|---|---|---|---|
| **Primary Emergency Contact:** | Rex Smith, Friend<br>1235 Avenue A<br>Garland, TX 75040 | **Secondary Emergency**<br>**Contact:** | *[POC]*<br>*[Address]* |
| **Telephone:** | (214) 674-0036 | **Telephone:** | |

**Mentor Information:**

| | |
|---|---|
| **Offenses/Violator Offenses:** | Receipt of Child Pornography through Interstate and Foreign / Commerce / |
| **Sentence/Supervision:** | 70 Months / Life - 3559 PLRA |
| **Special Parole Term:** | No Special Parole Term |

| Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status |
|---|---|---|---|---|
| 12-20-2007 | 49 Months 3 Days / 58 Days / 0 Days | 216 / 0 / 0 | 0 / 0 / 0 | **Parole Information not applicable** |

**Detainers:**      N
**Pending Charges:**   None known

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| ASSESSMENT USDC | $100.00 | $0.00 | 3:06-CR-369-O (1) / FTXN | FINANC RESP-COMPLETED $100.00 SINGLE |

| | | | | | |
|---|---|---|---|---|---|
| **Financial Plan** | | **Comm Dep-6 mos:** | $972.96 | **Cost of Incarceration** | |
| **Active:** | N | **Commissary** | | **Fee:** | Fee Imposed |
| **Financial Plan Date:** | 01-18-2008 | **Balance:** | $60.12 | | $100.00 |

## Payments

| | |
|---|---|
| **Commensurate:** | Y |
| **Missed:** | N |

| | |
|---|---|
| **Judicial Recommendations:** | FCI Seagoville / None / No Judicial Recommendations |

| | |
|---|---|
| **Special Conditions of Supervision:** | Shall participate in Sex Offender treatment. Shall not have any form of unsupervised contact with minors under 18. Shall not possess pornography. Shall register with state and local law enforcement. Shall submit to a search of his property. |

| | | | |
|---|---|---|---|
| **USPO** | Jolene R. Whitten, Chief | **USPO** | *[POC]* |
| **Sentencing:** | Texas Northern Probation Office | **Relocation:** | *[District]* |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 01-23-2012**

Name: **PEARSON, RONALD C**

RegNo: **36037-177**

| | | |
|---|---|---|
| | Earle Cabell Federal Building and United States Courthouse<br>1100 Commerce Street Room 1329<br>Dallas, TX 75242 | *[Street Address/Suite]*<br>*[City], [State] [Zip]* |
| **Phone/Fax:** | 214-753-2500 / 214-753-2570 | **Phone/Fax:** *[Phone] / [Fax]* |

| | | | |
|---|---|---|---|
| Subject to 18 U.S.C. 4042(B) Notification: | N | DNA Required: | Y - [Date] |
| | | Subject to Sex Offender Notifications: | [Y,N,N/A] |
| | | Treaty Transfer Case: | [Y,N] |

**Profile Comments:**

## EDUCATION DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| SEA | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-25-2008 | CURRENT |
| SEA | ESL HAS | ENGLISH PROFICIENT | 01-10-2008 | CURRENT |

### History

```
REGISTER NO: 36037-177      NAME..: PEARSON              FUNC: DIS
FORMAT.....: TRANSCRIPT    RSP OF: SEA-SEAGOVILLE FCI

------------------------ EDUCATION INFORMATION ------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
SEA  ESL HAS    ENGLISH PROFICIENT       01-10-2008 0001 CURRENT
SEA  GED HAS    COMPLETED GED OR HS DIPLOMA 01-25-2008 1536 CURRENT

------------------------ EDUCATION COURSES ------------------------
SUB-FACL   DESCRIPTION             START DATE  STOP DATE EVNT AC LV  HRS
SEA        JOB FAIR INFORMATION I    2 09-22-2010 09-22-2010  P  C  P    2
SEA        RELEASE PORTFOLIO COMPLETED 03-15-2010 06-15-2010  P  C  P   12
SEA        REAL ESTATE CLASS           11-18-2009 12-23-2009  P  C  P    6
SEA SOP    DRIVERS EDUCATION         6 05-09-2009 05-30-2009  P  C  P    4
SEA SOP    LIFE CONNECTIONS/RELGS SVC 6 04-15-2009 04-15-2009  P  C  P    6
SEA SOP    EARTH NATURAL RESOURCE CLASS 6 01-17-2009 03-21-2009 P C P   10
SEA SOP    INCOME TAX CLASS            02-05-2009 02-26-2009  P  C  P    4
SEA SOP    INVESTING IN STOCK        3 01-08-2009 01-29-2009  P  C  P    8
SEA SOP    LIFE CONNECTIONS/RELGS SVC 6 12-30-2008 12-30-2008  P  C  P    6
SEA SOP    INVESTING IN FUNDS        3 11-06-2008 12-04-2008  P  C  P    4
SEA SOP    REAL ESTATE CLASS           10-01-2008 11-05-2008  P  C  P   12
SEA SOP    MAIN STREET TO WALL STREET  07-28-2008 09-08-2008  P  C  P    6
SEA SOP    BUILDING A BUSINESS PLAN  3 07-28-2008 09-08-2008  P  C  P    6
SEA SOP    SIGNIFICANT SEVEN           06-30-2008 07-21-2008  P  C  P    4
SEA SOP    LANGUAGE OF BUSINESS      3 06-30-2008 07-21-2008  P  C  P    4
SEA SOP    CASH FLOW QUADRANT CLASS  3 07-31-2008 09-04-2008  P  C  P   12
SEA SOP    EARTH SCIENCE COURSE        07-05-2008 08-09-2008  P  C  P    6
SEA DRUG   EMPLMNT CNSL,RETENTION,ASSMNT 02-26-2008 04-01-2008 P C P   12
SEA SOP    EMPLOYMENT SKILLS CLASS/CAMP 2 02-26-2008 04-01-2008 P C P    6
SEA SOP    EAT FOR HEALTH/FIT FOR LIFE 1 07-23-2008 07-23-2008 P C P   24
SEA SOP    EARTH NATURAL RESOURCE CLASS 6 05-10-2008 07-12-2008 P C P   20
SEA SOP    EAT FOR HEALTH/FIT FOR LIFE 1 04-28-2008 06-02-2008 P C P    4
SEA SOP    STRATEGIES FOR LIVING     6 04-08-2008 05-27-2008  P  C  P   16
SEA SOP    PERSONAL FINANCE CLASS    3 04-17-2008 05-08-2008  P  C  P    4
SEA SOP    VICTIM IMPACT             6 01-23-2008 04-22-2008  P  C  P   26
SEA        PARALEGAL APPRENTICESHIP PRG6 03-21-2008 03-31-2008 P W V   12
SEA SOP    ADMISSION AND ORIENTATION   01-10-2008 01-10-2008  P  C  P    7
SEA SOP    RELEASE REQUIREMENTS      5 01-10-2008 01-10-2008  P  C  P    1




G0005          TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

# PROGRESS REPORT: 01-23-2012
RegNo: **36037-177**

## WORK DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|----------|-----------|-------------|------------|-----------|
| SEA | FOODSVC LN | FOOD SERVICE LN | 12-14-2011 | CURRENT |

### History

```
REG NO..: 36037-177 NAME....: PEARSON, RONALD C
  CATEGORY: WRK      FUNCTION: DIS        FORMAT:

  FCL    ASSIGNMENT  DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
  SEA    FOODSVC LN  FOOD SERVICE LN             03-01-2011 1102 CURRENT
  SEA    FOODSVC LN  FOOD SERVICE LN             01-07-2011 1210 03-01-2011 0856
  SEA    FOODSVC LN  FOOD SERVICE LN             11-28-2010 0001 01-07-2011 0921
  SEA    VACATION    VACATION                    11-21-2010 0001 11-28-2010 0001
  SEA    FOODSVC LN  FOOD SERVICE LN             10-26-2009 1149 11-21-2010 0001
  SEA    FOODSVC LN  FOOD SERVICE LN             10-02-2009 1251 10-26-2009 0904
  SEA    FOODSVC LN  FOOD SERVICE LN             04-03-2009 1134 10-02-2009 0847
  SEA    FOODSVC LN  FOOD SERVICE LN             03-13-2009 0001 04-03-2009 0529
  SEA    VACATION    VACATION                    03-08-2009 0001 03-13-2009 0001
  SEA    FOODSVC LN  FOOD SERVICE LN             02-05-2009 1112 03-08-2009 0001
  SEA    FOODSVC LN  FOOD SERVICE LN             12-04-2008 1520 02-05-2009 0752
  SEA    FOODSVC LN  FOOD SERVICE LN             01-18-2008 0001 12-04-2008 0757
  SEA    FOOD SVC A  FOOD SERVICE AM             01-17-2008 0001 01-18-2008 0001
  SEA    B-54 T-ORD  BUILDING 54 TEMP ORDERLY    01-14-2008 0001 01-17-2008 0001
  SEA    UNASSG      UNASSIGNED WORK DETAIL      01-11-2008 1201 01-14-2008 0001
  SEA    A&O         ADM & ORIENTATION           01-07-2008 1312 01-11-2008 1201
  SEA    UNASSG      UNASSIGNED WORK DETAIL      12-20-2007 1712 01-07-2008 1311
  SEA    UNASSG      UNASSIGNED WORK DETAIL      10-26-2007 1708 11-02-2007 2043
  SEA    UNASSG      UNASSIGNED WORK DETAIL      11-15-2006 1728 11-17-2006 1758
  SEA    UNASSG      UNASSIGNED WORK DETAIL      11-15-2006 1041 11-15-2006 1043


  G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

## DISCIPLINE DATA

### History

```
  REGISTER NO: 36037-177 NAME..: PEARSON, RONALD C
  FUNCTION...: DIS        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 10-27-2011
                RSP OF: SEA-SEAGOVILLE FCI
```

```
  G5401       DISCIPLINE DATA DOES NOT EXIST FOR THIS INMATE
```

## MOVEMENT DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|----------|-----------|-------------|------------|-----------|
| SEA | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-14-2011 | CURRENT |

### History

# INMATE SKILLS DEVELOPMENT PLAN
## PROGRESS REPORT: 01-23-2012
Name: **PEARSON, RONALD C**

RegNo: **36037-177**

```
REG NO..: 36037-177 NAME....: PEARSON, RONALD C
 CATEGORY: ARS       FUNCTION: DIS       FORMAT:

FCL    ASSIGNMENT   DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
SEA    A-DES        DESIGNATED, AT ASSIGNED FACIL 01-07-2008 1312 CURRENT
4-Q    RELEASE      RELEASED FROM IN-TRANSIT FACL 01-07-2008 1412 01-07-2008 1412
4-Q    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 01-07-2008 1411 01-07-2008 1412
SEA    HLD REMOVE   HOLDOVER REMOVED              01-07-2008 1311 01-07-2008 1311
SEA    A-HLD        HOLDOVER, TEMPORARILY HOUSED  12-20-2007 1712 01-07-2008 1311
SEA    BAIL/BOND    BAIL/BOND                     11-02-2007 2043 12-20-2007 1712
SEA    A-PRE        PRE-SENT ADMIT, ADULT         10-26-2007 1708 11-02-2007 2043
SEA    BAIL/BOND    BAIL/BOND                     11-17-2006 1758 10-26-2007 1708
SEA    A-PRE        PRE-SENT ADMIT, ADULT         11-15-2006 1728 11-17-2006 1758
4-Q    RELEASE      RELEASED FROM IN-TRANSIT FACL 11-15-2006 1828 11-15-2006 1828
4-Q    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 11-15-2006 1143 11-15-2006 1828
SEA    ADMIN REL    ADMINISTRATIVE RELEASE        11-15-2006 1043 11-15-2006 1043
SEA    A-ADMIN      ADMINISTRATIVE ADMISSION      11-15-2006 1041 11-15-2006 1043


 G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

## CASE MANAGEMENT ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| SEA | PROG RPT | NEXT PROGRESS REPORT DUE DATE | 07-21-2012 | CURRENT |
| SEA | RPP UNT C | RELEASE PREP UNIT PGM COMPLETE | 03-07-2011 | CURRENT |
| SEA | V94 COA913 | V94 CURR OTHER ON/AFTER 91394 | 01-09-2008 | CURRENT |
| SEA | RPP PART | RELEASE PREP PGM PARTICIPATES | 01-09-2008 | CURRENT |

## MEDICAL DUTY STATUS ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| SEA | WGT 15 LB | WEIGHT-NO LIFTING OVER 15 LBS | 05-26-2011 | CURRENT |
| SEA | YES F/S | CLEARED FOR FOOD SERVICE | 12-16-2008 | CURRENT |
| SEA | REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 12-31-2007 | CURRENT |

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 01-23-2012

Name: **PEARSON, RONALD C**

RegNo: **36037-177**

## ACADEMIC

| Status | Response Summary |
|--------|------------------|
| ✔ | **INTELLECTUAL FUNCTIONING**<br>⊕ no intellectual deficits<br>ⓘ has NOT attended special education classes |
| ✔ | **LITERACY**<br>⊕ college degree<br>    masters |
| ✔ | **LANGUAGE**<br>⊕ fluent in English as primary language |
| ❗ | **COMPUTER SKILLS**<br>⊕ possesses keyboarding skills<br>⊖ lacks word processing skills<br>⊕ possesses internet navigation skills |

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

**PROGRESS REPORT: 01-23-2012**

RegNo: **36037-177**

## ACADEMIC

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| Goal:  To complete Paralegal, Earth Natural Science, Daily Living courses before releasing.  Enroll in Earth Natural Science by July 2008. |
| He enrolled in Earth Natural Resource as recommended at last review.  He also completed a Daily Living Course (Strategies Living) as recommended at last review.  He completed Personal Finance.  Continue participation in Earth Natural Science through January 2009. |
| PREVIOUS TEAM: 20081231 |
| He completed Earth Natural Science as recommended at last review.  He also completed, Investing In Funds, Real Estate, Main Street to Wall Street, Building a Business Plan, Significant Seven, Language of Business, and Cash Flow Quadrant. |
| PREVIOUS TEAM: 20090616 |
| He completed Investing in Stock, Income Tax, Earth Natural Resource, Life Connection, and Drivers Education.  Enroll in a educational course of your choice by December 2009. |
| PREVIOUS TEAM: 20091211 |
| He enrolled in a educational course of his choice (Real Estate) as recommended at last review.  Continue participation in Real Estate Class through June 2010. |
| PREVIOUS TEAM: 20100603 |
| He completed the Real Estate Class as recommended at last review.  Enroll in a ACE class of your choice by November 2010. |
| PREVIOUS TEAM: 20110507 |
| He did not enroll in Career Advantage Strategies for Success as recommended at last review. Participate in Community Resources in June 2011. |
| PREVIOUS TEAM: 20111027 |
| He did not participate in Community Resources as recommended at last review.  Enroll in Identifying Skills and Abilities by January 2012. |
| PREVIOUS TEAM: 20120123 |
| Inmate did not enroll in Identifying Skills class as recommended at his last program review. Recommend to enroll in the Creating Writing class by next program review. |

## VOCATIONAL/CAREER

| Status | Response Summary |
|---|---|
| ✓ | **EMPLOYMENT HISTORY**<br>ⓘ employed at time of arrest<br>⊕ consistent employment history within 5 years prior to incarceration |
| ❗ | **CAREER DEVELOPMENT**<br>⊕ possesses significant expertise in field<br>ⓘ Education, Training, and Library - 25 |

# INMATE SKILLS DEVELOPMENT PLAN

Name: **PEARSON, RONALD C**

## PROGRESS REPORT: 01-23-2012

RegNo: **36037-177**

## VOCATIONAL/CAREER

① Healthcare Practitioners and Technical - 29
① Other, specify.... Nursing

① realistic career/job goals upon release
① seeking position: Certified Paralegal
⊖ has no consistent work experience in this field
⊖ does not have an education degree related to this field



**INSTITUTION WORK HISTORY**

⊖ has no consistent institution work history
    Eval: 09-30-2011 Satisfactory
    Eval: 08-31-2011 Satisfactory
    Eval: 07-31-2011 Satisfactory
    Eval: 06-30-2011 Satisfactory
    Eval: 05-31-2011 Satisfactory
    Eval: 04-30-2011 Satisfactory
① due to less than good evaluations (non-medical)



**POST INCARCERATION EMPLOYMENT**

⊖ post-incarceration employment not secured
① no secured employment upon release, but employer information specified
① other: He will secure employment through RRC placement.

⊖ no release documents obtained to date

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

**PROGRESS REPORT: 01-23-2012**

RegNo: **36037-177**

## VOCATIONAL/CAREER

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| Enroll in Employment by July 2008.  He did not enroll in Employment class as recommended at last review.  Enroll in a Vocational Training Program of your choice by January 2009. |
| PREVIOUS TEAM: 20081231 |
| He did not enroll in a Vocational Training Program of his choice as recommended at last review.  Enroll in Computer Vocational Training by June 2009. |
| PREVIOUS TEAM: 20090616 |
| He did not enroll in Computer VT as recommended at last review.  Enroll in Horticulture VT by December 2009. |
| PREVIOUS TEAM: 20091211 |
| He did not enroll in Horticulture VT as recommended at last review.  Enroll in a Apprenticeship Program of your choice by June 2009. |
| PREVIOUS TEAM: 20100603 |
| He did not enroll in a Apprenticeship Program of his choice as recommended at last review. |
| PREVIOUS TEAM: 20110507 |
| PREVIOUS TEAM: 20111027 |
| Enroll in Auto Sales by January 2012. |
| PREVIOUS TEAM: 20120123 |
| Inmate did not enroll in the Auto Sales class as recommended at his last program review. Recommend to enroll in the Advance Leadership class by next program review. |

## INTERPERSONAL

| Status | Response Summary |
|---|---|
| **(!)** | **RELATIONSHIPS** <br> ⊕ no adverse life experiences <br><br> ⊖ negative peer influences prior to incarceration <br> ① criminal associates |
| **(✓)** | **FAMILY TIES/SUPPORT SYSTEM** <br> ⊕ consistent social support available <br> Spouse: None <br> Companion: None <br> Immediate Family: Emotional <br> Immediate Family: General <br> Relative: General <br> Friend: Financial |

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

## PROGRESS REPORT: 01-23-2012
RegNo: **36037-177**

## INTERPERSONAL

|  |  |
|---|---|
|  | Friend: Emotional<br>Friend: General |
|  | **PARENTAL RESPONSIBILITY**<br>ⓘ no children under the age of 21<br><br>ⓘ no children under the age of 21 financially responsible for<br><br>ⓘ RRC (MINT) Placement is recommended<br>ⓘ date referred: 01-23-2012<br>ⓘ delivery date: 01-23-2012<br>ⓘ proposed guardian: N/A |
|  | **COMMUNICATION**<br>⊕ displays good communication skills |

### Progress and Goals

PREVIOUS PROGRESS REPORT: 20110310

PREVIOUS PROGRESS REPORT: 20090721

PREVIOUS TEAM: 20080709

He maintains regular communication with his family and friends.  He is courteous and cooperative with staff and his inmate peers.  Maintain current level of functioning through January 2009.

PREVIOUS TEAM: 20081231

No deficits noted, he maintained current level of functioning as recommended at last review.  Continue to maintain current level of functioning through June 2009.

PREVIOUS TEAM: 20090616

No deficits noted, he maintain current level of functioning as recommended at last review.  Maintain family ties visiting, telephone, and correspondence.

PREVIOUS TEAM: 20091211

He maintained family ties through visiting, phone calls, and correspondence as recommended at last review.  Continue to maintain family ties through visits, phone calls, and correspondence through June 2010.

PREVIOUS TEAM: 20100603

He maintained family ties through visits, phone calls, and correspondence as recommended at last review.  Continue to maintain family ties through visits, phone calls, and correspondence through November 2010.

PREVIOUS TEAM: 20110507

He maintained family ties through visits, phone calls, and correspondence as recommended at last review.  Continue to maintain family ties through visits, phone calls, and correspondence through November 2011.

PREVIOUS TEAM: 20111027

He maintained family ties through visits, phone calls, and correspondence as recommended at last review.  Continue to maintain family ties through visits, phone calls, and correspondence through January 2012.

PREVIOUS TEAM: 20120123

He maintained family ties through visits, phone calls, and correspondence as recommended at last review. Continue to maintain family ties through visits, phone calls, and correspondence through April 2012.

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 01-23-2012**

Name: **PEARSON, RONALD C**

RegNo: **36037-177**

## WELLNESS

| Status | Response Summary |
|---|---|
| ❗ | **HEALTH PROMO/DISEASE PREVENT** |
| | ⊕ within acceptable weight range |
| | ① height 5 ft. 6 in. |
| | ① weight (lbs) 145 |
| | ① BMI Score 23.4 |
| | ① date calculated 02-08-2008 |
| | ⊕ maintains physical fitness thru regular exercise; |
| | ① aerobic exercise |
| | ⊕ no evidence of behaviors associated with increased risk of infectious disease |
| | ⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco) |
| | ⊖ did not have a primary care provider or clinic (prior to incarceration) |
| | ⊖ does not have health insurance coverage upon release |
| ❗ | **DISEASE/ILLNESS MANAGEMENT** |
| | ⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required |
| | ⊖ medical Care Level II (Chronic care - stable) - See Exit Summary |
| | ⊕ no dental problems |
| | ⊕ no non-routine services/assistance devices needed |
| ❗ | **TRANSITIONAL PLAN** |
| | ⊖ requires medication upon release from custody - See Exit Summary |
| | ⊖ requires on-going treatment or follow-up after release from custody - See Exit Summary |
| | ① TB Clearance Complete - See Exit Summary |
| | ⊕ health Services recommends for RRC placement |
| ❗ | **GOVERNMENT ASSISTANCE** |
| | ① has not previously received Social Security assistance |
| | ① eligible for Social Security assistance after release |
| | ⊖ application not submitted to SSA |
| | ① has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |
| | ① spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

## PROGRESS REPORT: 01-23-2012
RegNo: **36037-177**

## WELLNESS

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| Enroll in Disease Prevention by July 2008.  He did not enroll in Disease Prevention as recommended at last review. However, he completed Eat For Health/For Life. |
| PREVIOUS TEAM: 20081231 |
| Walk and Exercise Daily through June 2009. |
| PREVIOUS TEAM: 20090616 |
| He Walked and Exercised Dailt as recommended at last review.  Continue to Walk and Exercise Daily through December 2009. |
| PREVIOUS TEAM: 20091211 |
| He Walked and Exercised Daily as recommended at last review.  Continue to Walk and Exercise Daily through June 2010. |
| PREVIOUS TEAM: 20100603 |
| He Walked and Exercised Daily as recommended at last review.  Continue to Walk and Exercise Daily through November 2010. |
| PREVIOUS TEAM: 20110507 |
| He Walked and Exercised daily as recommended at last review.  Continue to Walk and Exercise Daily through November 2011. |
| PREVIOUS TEAM: 20111027 |
| He Walked and Exercised Daily as recommended at last review. Continue to Walk and Exercise Daily through January 2012. |
| PREVIOUS TEAM: 20120123 |
| He walked and exercised daily as recommended at last review. Continue to walk and exercise daily through April 2012. |

## MENTAL HEALTH

| Status | Response Summary |
|---|---|
| ⊘ | **SUBSTANCE ABUSE MANAGEMENT**<br>ⓘ no evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest<br><br>ⓘ history of substance abuse treatment not applicable<br>ⓘ not currently participating in substance abuse treatment |
| ❗ | **MENTAL ILLNESS MANAGEMENT**<br>⊖ history of mental health diagnosis prior to incarceration<br>ⓘ prior outpatient treatment for mental disorder<br>ⓘ prior psychotropic treatment for mental disorder<br>ⓘ details: Received antidepressant and anxiolytic medications for one year prior to current incarceration.<br><br>ⓘ mental health diagnosis during incarceration<br>ⓘ mood disorders |

# INMATE SKILLS DEVELOPMENT PLAN

Name: **PEARSON, RONALD C**

## PROGRESS REPORT: 01-23-2012

RegNo: **36037-177**

## MENTAL HEALTH

| | |
|---|---|
| | ⊖ further mental disorder treatment required<br>① inmate agrees and/or seeks treatments<br>① inmate is compliant with treatment<br><br>⊕ no history of serious suicidal ideation or attempts |
|  | **TRANSITIONAL PLAN** |
|  | **APPROPRIATE SEXUAL BEHAVIOR**<br>⊖ evidence of sexually inappropriate behavior<br>① criminal conviction<br>① details: Current sentence is for possession and receipt of child pornography. |

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20110310

PREVIOUS PROGRESS REPORT: 20090721

PREVIOUS TEAM: 20080709

Particpate in non residential sex offender treatment as it becomes available.  He has no mental health concerns at this time.

PREVIOUS TEAM: 20081231

He has no mental health concerns at this time.

PREVIOUS TEAM: 20090616

Participate in SOMP by December 2009.  He has no mental health concerns at this time.

PREVIOUS TEAM: 20091211

He participates in SOMP as recommended at last review.  Continue to participate in SOMP through June 2010.

PREVIOUS TEAM: 20100603

He has ongoing participation in SOMP as recommended at last review.  Continue participation in SOMP through November 2010.

PREVIOUS TEAM: 20110507

On March 4, 2011, he completed the SOMP as recommended at last review.  He has no mental health concerns at this time.

PREVIOUS TEAM: 20111027

He has no mental health concerns at this time.

PREVIOUS TEAM: 20120123

He has no mental health concerns at this time. SOMP completed

# INMATE SKILLS DEVELOPMENT PLAN
Name: **PEARSON, RONALD C**

## PROGRESS REPORT: 01-23-2012
RegNo: **36037-177**

## COGNITIVE

| Status | Response Summary |
|---|---|
| ✓ | **GENERAL BEHAVIOR**<br>⊕ no evidence of behavioral problems as a juvenile<br>⊕ no evidence of behavioral problems as an adult |
| ❗ | **CRIMINAL HISTORY**<br>⊖ violent and/or sex offender (current/prior)<br>   sex offenses: Single occurrence(s) |
| ✓ | **DOMESTIC VIOLENCE/ABUSE**<br>⊕ no history of domestic violence or abuse |
| ✓ | **CRIMINAL BEHAVIOR**<br>⊕ no onset of criminal behavior before the age of 14<br>⊕ no criminal versatility: Convictions in less than 3 categories<br>⊕ no significant history of violence: Less than 2 violent convictions |

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20110310

PREVIOUS PROGRESS REPORT: 20090721

PREVIOUS TEAM: 20080709

Maintain Clear Conduct through July 2008.  He maintained clear conduct as recommended at last review.  Continue to maintain clear conduct through January 2009.

PREVIOUS TEAM: 20081231

He maintained clear conduct as recommended at last review.  Continue to maintain clear conduct through June 2009.

PREVIOUS TEAM: 20090616

He maintained Clear Conduct as recommended at last review.  Continue to maintain Clear Conduct through December 2009.

PREVIOUS TEAM: 20091211

He maintained Clear Conduct as recommended at last review.  Continue to maintain Clear Conduct through June 2010.

PREVIOUS TEAM: 20100603

He maintained Clear Conduct as recommended at last review.  Continue to maintain Clear Conduct through November 2010.

PREVIOUS TEAM: 20110507

He maintained Clear Conduct as recommended at last review. Continue to maintain Clear Conduct through November 2011.

PREVIOUS TEAM: 20111027

He maintained Clear Conduct as recommended at last review. Continue to maintain Clear Conduct through January 2012.

PREVIOUS TEAM: 20120123

He maintained clear conduct as recommended at last review. Continue to maintain clear conduct through April 2012.

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 01-23-2012**

Name: **PEARSON, RONALD C**

RegNo: **36037-177**

## CHARACTER

| Status | Response Summary |
|---|---|
| (!) | **PERSONAL CHARACTER**<br>⊖ insufficient variety of behaviors to warrant overall positive personal character<br>⊕ active participation in social/civic (provides assistance to others) organization<br>⊕ care of a sick/disabled relative<br>⊕ fulfills financial obligations<br>⊕ empathic toward victims of crime/participates in Victim Impact Program panel<br>ⓘ religious assignment: PROTESTANT<br><br>⊖ criminal history contains evidence of influence by others |
| (✓) | **PERSONAL RESPONSIBILITY**<br>ⓘ reports responsibility for current incarceration as:<br>⊕ self (sole responsibility)<br><br>⊕ made efforts to make amends for their crime(s)<br>⊕ other: COMPLETED VICTIM IMPACT PROGRAM COMPLETE SEX OFFENDER MANAGEMENT PROGRAM, SND FOLLOW SEX OFFENDER PROGRAM |

# INMATE SKILLS DEVELOPMENT PLAN
Name: PEARSON, RONALD C

**PROGRESS REPORT: 01-23-2012**

RegNo: 36037-177

## CHARACTER

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| FRP-COMPLETED   BALANCE IN ACCOUNT $17.57<br>LSMD-$972.60    LSMP$100 DOLLARS  HE COMPLETED THE VICTIM IMPACT PROGRAM. |
| FRP-PARTICIPATES  ESTABLISHED FRP-PLAN FOR $100 SINGLE PAYMENT STARTING ON 02-2008.   BALANCE IN ACCOUNT $56.10<br>LSMD-$300 |
| PREVIOUS TEAM: 20081231 |
| On April 22, 2008, he completed the Victim Impact Program. |
| PREVIOUS TEAM: 20090616 |
| On February 12, 2008, he completed his $100 Court-ordered Felony Assessment. |
| PREVIOUS TEAM: 20091211 |
| FRP-COMPLETED   BALANCE IN ACCOUNT $36.43<br>LSMD-$885.56    COMPLETED DRIVERS EDUCATION AND LIFE CONNECTIONS / REL SVCS CLASSES. |
| PREVIOUS TEAM: 20100603 |
| FRP-COMPLETED. |
| PREVIOUS TEAM: 20110507 |
| FRP-COMPLETED   BALANCE IN ACCOUNT $70.66<br>LSMD-$1343.56 |
| PREVIOUS TEAM: 20111027 |
| FRP-COMPLETED   BALANCE IN ACCOUNT $60.12<br>LSMD-$927.96    NEEDS TO ENROLL IN EDUCATION PROGRAM BY JANUARY 2012. |
| PREVIOUS TEAM: 20120123 |
| FRP completed. Recommend to enroll in the Sport's Nutrition class starting on 01-30-12 through 03-12-12 by next program review. |

## LEISURE

| Status | Response Summary |
|---|---|
|  | **USE OF LEISURE TIME**<br>⊕ activities indicative of positive use of leisure time;<br>⊕ participation in a faith group<br>⊕ participation in a social/civic/community organization(s)<br>⊕ family time<br>⊕ sports/exercise<br>⊕ movies/television/music<br>⊕ reading<br>⊕ other: LIKES GOING TO ANTIQUE MALLS AND SHOPS, AND COLLECTING THEM |

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 01-23-2012

Name: PEARSON, RONALD C

RegNo: 36037-177

## LEISURE

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| MAINTAIN GOOD PHYSICAL FITNESS THROUGH JULY 2008.  HE MAINTAINED GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW.  CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH JANUARY 2009. |
| PREVIOUS TEAM: 20081231 |
| HE MAINTAINED GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW.  CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH JUNE 2009. |
| PREVIOUS TEAM: 20090616 |
| He maintained good physical fitness as recommended at last review.  Continue to maintain good unit sanitation reports through December 2009. |
| PREVIOUS TEAM: 20091211 |
| HE MAINTAINED GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW.  CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH JUNE 2010. |
| PREVIOUS TEAM: 20100603 |
| He maintained good physical fitness as recommended at last review.  Continue to maintain good physical fitness through November 2010. |
| PREVIOUS TEAM: 20110507 |
| HE MAINTAINED GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW.  CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH NOVEMBER 2011. |
| PREVIOUS TEAM: 20111027 |
| HE CONTINUED TO MAINTAIN GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW.  CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH JANUARY 2012. |
| PREVIOUS TEAM: 20120123 |
| HE CONTINUED TO MAINTAIN GOOD PHYSICAL FITNESS AS RECOMMENDED AT LAST REVIEW. CONTINUE TO MAINTAIN GOOD PHYSICAL FITNESS THROUGH APRIL 2012. |

## DAILY LIVING

| Status | Response Summary |
|---|---|
|  | **FINANCIAL MANAGEMENT**<br>⊕ knowledge in maintaining checking account<br>⊕ knowledge in maintaining savings account<br>⊕ knowledge in utilizing an ATM debit card<br>⊕ knowledge in obtaining loans<br>⊕ has an established positive credit history<br>⊕ lived within financial means<br>⊕ pays monthly bills on time |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 01-23-2012**

Name: PEARSON, RONALD C

RegNo: 36037-177

## DAILY LIVING



**FOOD MANAGEMENT**

- ⊕ possesses grocery shopping/consumer skills
- ⊕ makes good nutritional choices to maintain health
- ⊖ does not possess basic food preparation skills
- ⊕ knowledgeable in accessing community resources to obtain food



**PERSONAL HYGIENE/SANITATION**

- ⊕ good personal hygiene and sanitation
- ① quarters assignment: HOUSE D/RANGE 04/BED 433U



**TRANSPORTATION**

- ⊖ does not have valid driver's license
- ⊖ Outstanding motor vehicle violations

- ⊖ does not own personal vehicle with appropriate insurance
- ⊕ possesses public transportation skills and has access to public transportation



**IDENTIFICATION**

- ⊖ does not have photo identification
- ⊕ has birth certification
- ⊕ has social security card



**HOUSING**

- ⊕ established housing year prior to incarceration
- ① established housing: owned or mortgage
- ① established housing: lived alone
- ① established housing: non-publicly assisted
- ⊕ established housing not in a high crime neighborhood

- ⊕ housing upon release
- ① supervision district is not a relocation
- ① anticipated housing plan NOT approved by USPO(s)
- ① no concerns with anticipated housing plan



**RESIDENTIAL REENTRY CENTER (RRC) PLACEMENT**

- ① recommended or ordered for RRC placement
- ① recommended range: 151-180 days



**FAMILY CARE**

- ⊕ not responsible for obtaining child care for any dependent children upon release
- ⊕ not responsible for obtaining elder care for any dependent(s) upon release
- ⊕ not responsible for obtaining any other special services for dependents upon release

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 01-23-2012

Name: PEARSON, RONALD C

RegNo: 36037-177

## DAILY LIVING

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110310 |
| PREVIOUS PROGRESS REPORT: 20090721 |
| PREVIOUS TEAM: 20080709 |
| Maintain good sanitation through July 2008.  He maintain good sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through January 2009. |
| PREVIOUS TEAM: 20081231 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through June 2009. |
| Inmate Pearson is currently not yet eligible for RRC consideration due to time remaining to be served.  He will be considered for RRC placement according to USC 18:3621(b) when he is within 17-19 months from release. |
| PREVIOUS TEAM: 20090616 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through December 2009.  Obtain a copy of your Social Security Card and Birth Certificate by November 2011. |
| PREVIOUS TEAM: 20091211 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through June 2010. |
| PREVIOUS TEAM: 20100603 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through November 2010. |
| PREVIOUS TEAM: 20110507 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitatio  reports through November 2011. |
| PREVIOUS TEAM: 20111027 |
| He maintained good unit sanitation reports as recommended at last review.  Continue to maintain good unit sanitation reports through January 2012. |
| PREVIOUS TEAM: 20120123 |
| He maintained good unit sanitation reports as recommended at last review. Continue to maintain good unit sanitation reports through April 2012. |

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 01-23-2012

Name: PEARSON, RONALD C

RegNo: 36037-177

## INMATE SKILLS STATUS

| Status | Initial Assessment 07-09-2008 | Previous Assessment 01-23-2012 | Current Assessment 01-23-2012 |
|---|---|---|---|
| Attention Required | 41.1% | 32.2% | 32.2% |
| Mitigating Issues | 0% | 0% | 0% |
| Unanswered | 2.8% | 6.4% | 6.4% |
| Satisfactory | 50% | 56.7% | 56.7% |
| Not Applicable | 6.1% | 4.7% | 4.7% |

| Skill Area | Attention Required | Mitigating Issues | Unanswered | Satisfactory | Not Applicable |
|---|---|---|---|---|---|
| Academic | 5% | 0% | 0% | 95% | 0% |
| Vocational/Career | 55% | 0% | 20% | 25% | 0% |
| Interpersonal | 15% | 0% | 2.5% | 75% | 7.5% |
| Wellness | 60% | 0% | 0% | 30% | 10% |
| Mental Health | 40% | 0% | 25% | 10% | 25% |
| Cognitive | 30% | 0% | 0% | 70% | 0% |
| Character | 40% | 0% | 0% | 60% | 0% |
| Leisure | 0% | 0% | 0% | 100% | 0% |
| Daily Living | 45% | 0% | 10% | 45% | 0% |

EXHIBIT F



# Recidivism among sex offenders in Connecticut

State of Connecticut
Office of Policy and Management
Criminal Justice Policy & Planning Division
February 15, 2012

# Introduction

Each February 15 the Criminal Justice Policy and Planning Division of the Office of Policy and
Management issues two criminal justice reports:

Annual Recidivism Report
Correctional Population Forecast Report

These reports provide policy makers and front-line professionals with the information they need to
continue the progress our state has experienced in recent years. Governor Dannel P. Malloy has
set two goals for our state's criminal justice system: reduce crime and maximize efficiency.
Recidivism and changes in the correctional population are two important indicators of progress
in this regard.

This year our report puts the focus on sex offenders. You will see in this analysis a new and
somewhat unique perspective. For the first time, we measure offenders with previous sex
offense convictions as well as convicted offenders who were originally charged as sex offenders
but who were ultimately convicted of other offenses. We believe this will provide policy makers
and practitioners with the data and analysis they need to identify offenders with a high risk for
committing new sex offenses following release from prison. At the end of the day, our goal is
public safety by reducing the level of recidivism. Based on our analysis, post-release supervision
focused on the high-risk sex offenders appears to be a cost-effective strategy to prevent crime.

Please feel free to share your ideas about how we can best accomplish these goals going forward.
With your help, I am confident that our state can continue to achieve better outcomes with
offenders who are incarcerated or who are being supervised by parole or probation officers. As
the prison population continues to decline, it is my hope that some of the consequent budgetary
savings will be reinvested in the supervision and treatment programs that have demonstrated
success.

Thank you for taking the time to read this report. Please visit our website for more information on
current trends in Connecticut's criminal justice system.

*Mike Lawlor*
*Under Secretary*
*Criminal Justice Policy and Planning Division*
*State Office of Policy and Management*
*450 Capitol Avenue*
*Hartford, CT 06106-1365*
*(Office) 860-418-6394*
*www.ct.gov/opm/cjppd*

1

# Acknowledgements

This report could not have been produced without the help and assistance of many people. First and foremost, the research published here reflects the guidance, advice and feedback of an advisory panel of experts who work on the front lines of State efforts to manage, supervise and treat Connecticut's population of sex offenders. The analysis could not have been accomplished without the data and support provided by the Department of Correction and the Judicial Branch's Court Support Services Division. Without them, it would have been impossible to collect complete criminal histories on 14,398 offenders within the time that was available. The Office of the State Public Defender and the Board of Pardons and Parole provided invaluable access to their staff who explained their important roles in the process. In addition, there are dozens of people from various State criminal justice agencies that helped to move this project forward in one way or another.

Finally, it is necessary to acknowledge that this report is funded, in part, through a grant awarded by the Bureau of Justice, Office of Justice Programs at the U.S. Department of Justice. The opinions, findings and conclusions expressed here are those of the contributors and do not necessarily represent the views of the U.S. Department of Justice.

Ivan Kuzyk, Author

Director, CT Statistical Analysis Center
Office of Policy and Management
Criminal Justice Policy & Planning Division

# Table of Contents

Introduction by Under Secretary Mike Lawlor    1
Acknowledgements    2
Table of Contents    3
Executive Summary    4

**Findings**

Sex offenders in Connecticut    6
Recidivism among 746 sentenced sex offenders    8
Recidivism among sex offender subgroups    14
Releases and discharges in 2005    17
The Sex Offender Registry    18
A final caveat    19

**Appendices**

Advisory panel    20
Methodological questions    21
Sex offender typologies, chart    25
Recidivism – 1,395 offenders with a prior arrest for a sex crime    26
Recidivism – 896 offenders with a prior conviction for a sex crime    28
Recidivism – 746 offenders with a sentence history for a sex crime    29
Recidivism – 423 offenders whose last sentence was for a sex crime    31
Recidivism – 1,229 offenders w/Sex Treatment Scores higher than 2    33
Summary of new prison sentences for sex crimes    36
General criminality among offenders who were released in 2005    37
Sex offenders, parole and special parole    38
Age at first arrest for a sex crime    39
Age at first sex offense resulting in a prison sentence    40
The Connecticut Risk Assessment Board    41
Special Management Unit – DOC Community Services Division    42
The Collaborative Model in Connecticut    43

**Glossary**    45

## Executive Summary

- Although the term "sex offender" is commonly used to describe anyone who has been convicted of sex-crimes, it is important to recognize that individuals who have committed sex offenses do not constitute a single, homogenous population. Together they exhibit a wide range of criminal behaviors that may or may not include violence or contact with other persons. As a consequence, the risk, or likelihood, of committing new sex crimes is not consistent across all sex offender types.

- This study tracked 14,398 men for a five-year period following their 2005 release or discharge from a CT prison in 2005. Every subsequent arrest, criminal conviction or reincarceration event was captured and analyzed to produce the 5-year recidivism rates for the group.

- In addition to analyzing recidivism among all offenders released or discharged during 2005, the study identified five subgroups from the total cohort who were either convicted for sex offenses or thought to have been involved in criminal sexual crimes but not convicted. The five subgroups were:
  - 1,395 men who had had a prior arrest for a sex-related offense
  - 896 men who had a prior conviction for a sex-related offense
  - 746 men who had served a prison sentence for a sex-related offense before being released in 2005
  - 423 men, a subset of the 746, whose last prison sentence before release was for a sex-related offense, and
  - 1,229 men who were assigned Sex Treatment Scores of 2 or higher by the Department of Correction prior to their 2005 release or discharge.

- In 2005, 746 offenders who had served a prison sentence for a least one sex-related offense were released or discharged from prison. Over the next five years:
  - 27 (3.6%) of these men were arrested and charged with a new sex crime.
  - 20 (2.7%) were convicted for new sex offense, and
  - 13 (1.7%) were returned to prison to serve a sentence for a new sex crime.

- The sexual recidivism rates for the 746 sex offenders released in 2005 are much lower than what many in the public have been led to expect or believe. These low re-offense rates appear to contradict a conventional wisdom that sex offenders have very high sexual re-offense rates. The real challenge for public agencies is to determine the level of risk which specific offenders pose the public.

4

- Recidivism data for each sex-offenders subgroup is presented in the Appendix.

- In 2005, 37% of non-sex offenders completed their sentences in prison. In contrast, 79% of the 746 sex offenders who had served a prison sentence for a new sex crime were discharged directly from a prison facility at the end of their sentences (EOS). The reason the EOS discharge rate was so high for sex offenders reflects two facts: 1) the DOC did not release TS-eligible sex offenders into the community and 2) sex offenders were not accepted in most of the DOC's residential, halfway house network. Almost 50% of sex offenders were sentenced to probation at the completion of their sentences compared to 33% for non-sex offenders.

- According to this analysis, arrest on a prior sex charge was the single best predictor of being sentenced to prison for a new sex crime in the five years following release from prison. Of the 1,395 offenders who had been arrested on sex charges before 2005, 2.4% were sentenced to prison for new sex offenses within 5 years. This compares with a 1.9% rate among offenders who had a prior conviction for a sex crime, and a 1.7% rate for offenders who had served a prison sentence for a prior sex crime. This finding warrants further study. It suggests that conviction and incarceration for a sex crime exerts a positive impact on reducing future sex crimes.

- The DOC-Sex Treatment Score was the 2nd best predictor of sexual recidivism. Among the 1,229 offenders with Sex Treatment Scores of 2 or higher, 2.3% were sentenced to prison for new sex offenses.

- Connecticut employs a unique collaborative approach in supervising and treating sex offenders in the community. The approach links parole officers and probation officers, victim advocates and a non-profit provider of sex offender treatment and programming. Together these organizations design oversight and supervision plans for every offender.

- Some sex offenders have extensive, violent non-criminal histories. Among the 195 offenders who had been convicted for Sex Assault 1 prior to 2005, 29.2% had also served a prison sentence for a burglary related crime; 13.3% had served a sentence for robbery. The high incidence of burglaries and robberies among this group indicates both a heightened willingness to use force and overstep boundaries. Among the entire population of male prisoners released in 2005, only 16% had been convicted of burglary-related charges and less than 8% had been convicted for a robbery.

5

## Sex offenders in Connecticut

- The following table contains data supplied by the CT State Police, the Department of Correction, CSSD Adult Probation and the Special Offender Management Unit at the DOC Division of Parole.  It is published here to provide readers with an appreciation for the size of the sex offender population in CT.

**Sex offender counts in CT on January 1, 2012**

|  | Offenders |
|---|---|
| Offenders on the Connecticut Sex Offenders Registry | 5,397 |
| Offenders out of compliance with registry requirements | 929 |
| Offenders supervised by Probation's Sex Offender Management Unit | 2,273 |
| Offenders supervised by Parole's Sex Offender Management Unit | 223 |
| Inmates w/DOC Sex Treament Score of S2 to S5 | 3,117 |
| Sex treatent score: S2, non-contact offender | 184 |
| Sex treatent score: S3, contact offender, one victim | 2,266 |
| Sex treatent score: S4, contact offender, more than one victim | 636 |
| Sex treatent score: S5, contact offender, gratuitous or sadistic violence | 31 |

- Although the term "sex offender" is commonly used to describe anyone who has been convicted of sex-crimes, it is important to recognize that individuals who have committed sex offenses do not constitute a single, homogenous population.  Together they exhibit a wide range of criminal behaviors that may or may not include violence or contact with other persons.  Sex offenders vary by age, ethnicity and social background. They also vary by their motivations, the nature of their crimes and by the extensiveness of their non-sex-related criminal histories.  As a consequence, the risk, or likelihood, of committing new sex crimes is not consistent across all sex offender types.

- This study tracked 14,398 sentenced male offenders for a five year period following their discharges from prison in 2005.  Prior to their 2005 releases, almost one-in-ten of these men (1,395) had been arrested and charged with a sex-related crime.  Eight hundred ninety-six (896) of these men had been convicted for a sex-related offense and 746 had served a prison sentence for a sexual offense prior to their 2005 release.

- The following chart was produced, with the assistance of this study's advisory panel, to help readers recognize some of the typologies that are observed among the population of sex offenders.  The illustration identifies three broad groups:  1) Child molesters 2) Rapists, and 3) Non-contact offenders.  It also distinguishes between offenders who have committed contact crimes and those whose crimes have involved no physical contact with a victim.  A more comprehensive chart appears in the appendices.

6



- During the course of this study, it was not possible to assign a definitive sex-offender typology to any of the sex offenders who were released in 2005. That information is not currently available in a manner that would allow us to study recidivism outcomes by sex offender typology. The Department of Correction assigns a Sex Treatment (Needs) Score to every offender who is sentenced to prison. These scores, however, were designed as population management tools, i.e., to assist staff in placing offenders in appropriate prison facilities. The scores were not designed for diagnostic risk assessment. As no coding scheme has been implemented that provides an accurate method of differentiating typologies or risk among sex offenders, the Sex Treatment Score is sometimes used as a *de facto* measure for differentiating risk among incarcerated sex offenders.

## Recidivism among 746 sentenced sex offenders

- In 2005, 14,398 sentenced, male offenders were released or discharged from a Connecticut prison. Over the next five years, 286 of these men were arrested and charged with sex offenses committed after they were released from prison. One hundred thirty-four (134) of these men were convicted for new sex offenses after they were released and 99 were returned to the prison to begin a new prison sentence for a sex crime[1]. Of the 99 men who received prison sentences for new sex crimes, only 13 had ever served a prior prison sentence for a sexual offense.

- Within the population of 14,398 men released from prison in 2005, 746 had served either their last sentence - or a previous prison sentence - for a sex- related offense. In this section of the report the rearrest, reconviction and reincarceration histories of these men will be highlighted. It is important for readers to recognize, however, that these men were not the only men released from prison in 2005 who had been involved in prior crimes in which a significant, criminal sexual component had been present. These 746 men were the only ones who had actually been convicted for specific sexual offenses and sentenced to prison. Within the total population of men released in 2005, this study was able to identify several hundred men who almost certainly were involved in a sex crime but had been able to avoid a conviction on a sex-related offense. Because their numbers were so significant, this study evaluated recidivism among four additional sex offender subgroups, in addition to the 746. Data on these sex offender groups are contained in the Appendices.

- The following table contains a summary of all sexual offenses that resulted in a prior prison sentence for the 746 sex offenders highlighted in this section of this report. The data contains counts for both offenses and offenders. Almost one quarter of these men had been sentenced to prison for Sex Assault 1. Twenty-six percent of these men had been sentenced to prison for Risk of Injury to a Minor, the most common child molestation charge. A small percentage of men had been incarcerated for prostitution related offenses. Prostitution-related offenses were included here even though it could be argued that these are morals offenses and not strictly sex offenses. Prior sentences related to Sex Registry non-compliance were also included since they indicated a prior conviction for a sex crime.

---

[1] It is widely acknowledged that sex crimes are among the least-reported serious crimes. As a result not all sex offenses result in an arrest.

Aggregate sex-related sentence history for 746 offenders released in 2005

| DOC Statute | Offense | Sentences imposed | Offenders sentenced | Percent of 746 offenders with sex-related prison sentence |
|---|---|---|---|---|
| **Sex assault 1** | | | | |
| 53A070 | SEXUAL ASSAULT, 1ST DEGREE          F | 203 | 181 | 24.3% |
| 53A072 | RAPE, FIRST DEGREE          BF | 9 | 9 | 1.2% |
| 53A070B | SEX ASLT, SPOUSE/COHAB RELATIONSHIP BF | 8 | 8 | 1.1% |
| 53A070A | SEXUAL ASSAULT 1ST DEGREE - AGGRVTD  F | 7 | 7 | 0.9% |
| 53-238 | RAPE                F | 1 | 1 | 0.1% |
| **Sex assault 2** | | | | |
| 53A071 | SEX ASSAULT, SECOND DEGREE     F | 231 | 201 | 26.9% |
| 53A073 | RAPE, SECOND DEGREE         CF | 3 | 3 | 0.4% |
| **Other sexual assault** | | | | |
| 53A073A | SEXUAL ASSAULT, 4TH DEGREE | 106 | 91 | 12.2% |
| 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF | 72 | 67 | 9.0% |
| **Crimes against minors** | | | | |
| 53-021* | INJURY OR RISK OF INJURY TO MINOR   F | 216 | 194 | 26.0% |
| 53A196A | EMPLOY MINOR IN OBSCENE PERFORMANCE AF | 1 | 1 | 0.1% |
| 53A090A | ENTICING A MINOR | 1 | 1 | 0.1% |
| **Registry offenses** | | | | |
| 54-252 | REG PERSON WHO COMM SEX VIOL OFF   DF | 21 | 20 | 2.7% |
| 54-251 | REG OF PERSON COMMIT CRIM OFF MINOR DF | 4 | 4 | 0.5% |
| **Prostitution related** | | | | |
| 53A082 | PROSTITUTION            AM | 46 | 21 | 2.8% |
| 53A083 | PATRONIZING A PROSTITUTE     AM | 14 | 14 | 1.9% |
| 53A088 | PROMOTING PROSTITUTION, 3RD DEGREE  DF | 7 | 8 | 1.1% |
| 53A087 | PROMOTING PROSTITUTION, 2ND DEGREE  CF | 5 | 5 | 0.7% |
| 53A086 | PROMOTING PROSTITUTION, 1ST DEGREE  BF | 4 | 4 | 0.5% |
| **Child pornography** | | | | |
| 53A196D | POSSESSING CHILD PORNOGRAPHY   F | 12 | 7 | 0.9% |
| 53A196C | IMPORTING CHILD PORNOGRAPHY    F | 1 | 1 | 0.1% |
| **Indecency/voyeurism** | | | | |
| 53A186 | PUBLIC INDECENCY           BM | 58 | 35 | 4.7% |
| 53A189A | VOYEURISM | 1 | 1 | 0.1% |

- In 2005, 746 sentenced offenders who had served a prison sentence for a least one sex-related offense were released or discharged from prison.  Over the next five years, 27 (3.6%) of these men were arrested and charged with a new sex crime.  Twenty (20), 2.7%, were convicted for new sex offense, and 13, 1.7%, were returned to prison to serve a sentence for a new sex crime.

5-year sex-crime recidivism - 746 offenders with a DOC sentence history for a sex crime

| Offender group | Males | Any new sex crime arrest | New sex crime arrest rate | New sex crime conviction | New sex crime conviction rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|
| No sex sentence history | 13652 | 259 | 1.9% | 114 | 0.8% | 86 | 0.6% |
| Sex sentence history | 746 | 27 | 3.6% | 20 | 2.7% | 13 | 1.7% |
| Total cohort | 14398 | 286 | 2.0% | 134 | 0.9% | 99 | 0.7% |

- The recidivism rates for new sex crimes, shown here for the 746 sex offenders released in 2005, are much lower than what many in the public have been led to expect or believe. These low re-offense rates appear to contradict the conventional wisdom that sex offenders have very high recidivism rates. In reality, the picture is considerably more complex. While some sex offenders certainly pose an extremely high risk for committing new offenses, this does not appear to be the case for the majority of offenders. The real challenge for public agencies is to determine the level of risk specific offenders pose to the public.

- While only 27 of the 746 sex offenders observed here were arrested on new sex-related charges, the new arrest rate for non-sex crimes was significantly higher. In fact, of the 746 sex offenders in the study, 76%, or 567, were rearrested within 5 years. This high rearrest rate was surpassed, barely, by the 13,652 offenders who did not have a prior sex-related sentence history. Of this larger group, 78.8% were rearrested.

New arrest rate - 746 offenders with a DOC sentence history for a sex crime

| Offender group | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13652 | 10751 | 78.8% | 5182 | 38.0% | 30 | 0.2% | 259 | 1.9% |
| Sex sentence history | 746 | 567 | 76.0% | 369 | 49.5% | 212 | 28.4% | 27 | 3.6% |
| total | 14398 | 11318 | 78.6% | 5551 | 38.6% | 242 | 1.7% | 286 | 2.0% |

- Of the 567 sex offenders who were rearrested, 369 (65%) were arrested for Violation of Probation (VOP). Among the 10,751 offenders without prior sex sentence histories who were arrested, only 48% were arrested for violating the terms of their probation. It is not clear, at this point, whether the difference in VOP-arrest rates reflects tighter oversight of sex offenders on probation, or the higher proportion of sex offenders sentenced to probation.

- Sex offenders were more likely than others to be sentenced to serve terms of probation once they had completed their prison sentences. In 2005, 47.9% of the 746 sex offenders in the study were sentenced to probation. That figure compares with just 33% for all offenders who were released.

10

**Offenders sentenced to probation following the completion of their 2005 prison sentence**

| Probation to follow | All males | No sex-related sentence history | Sex-related sentence history | Last sentence not sex-related | Last sentence was sex-related | Sex treatment score: 0 or 1 | Sex treatment Score >1 | DOC sex treatment score: 2 | DOC sex treatment score: 3 | DOC sex treatment score: 4 | DOC sex treatment score: 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No | 9652 | 9263 | 389 | 9520 | 132 | 8916 | 736 | 76 | 583 | 75 | 2 |
| Yes | 4746 | 4389 | 357 | 4455 | 291 | 4253 | 493 | 24 | 400 | 69 | |
| Total | 14398 | 13652 | 746 | 13975 | 423 | 13169 | 1229 | 100 | 983 | 144 | 2 |
| Probation to follow, % | 33.0% | 32.1% | 47.9% | 31.9% | 68.8% | 32.3% | 40.1% | 24.0% | 40.7% | 47.9% | 0.0% |

- In the five years following their 2005-releases from prison, 20 of the 746 sex offenders identified here were convicted for new sex offenses. This rate was over three times higher than the rate for non-sex offenders. Overall conviction patterns appeared similar to overall rearrest patterns. Once again, the non-sex crime group had a slightly higher recidivism rates for overall convictions. In the five years following their release in 2005, 69.3% of all offenders were convicted on new criminal charges. Among the 746 offenders with prior sex sentence histories the rate was slightly lower, 66.1%.

**New conviction rate - 746 offenders with a DOC sentence history for a sex crime**

| Offender group | Males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13652 | 9489 | 69.5% | 4772 | 35.0% | 18 | 0.1% | 114 | 0.8% |
| Sex sentence history | 746 | 493 | 66.1% | 338 | 45.3% | 128 | 17.2% | 20 | 2.7% |
| total | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

- Within five years of release, 493 of the 746 sex offenders released in 2005 were convicted for a wide range of new offenses. One quarter of these 493 men were convicted for violating the conditions of the CT Sex Offender Registry. While is not clear whether the high rate of registry-related arrests and convictions had any impact on reducing the number of sex crimes that were, or might have been, committed, it is apparent that the conditions attached to sex offender registration have a significant impact on the overall recidivism rate of sex offenders in the state.

- Three hundred (300) of the 746 sex offenders featured here were returned to prison to serve new sentences within five years of their releases. These offenders were sentenced to prison at a significantly lower rate (40.2%) than the 13,652 offenders who had no prior sex sentence history (50.3%). The rate at which the sex offenders were sentenced to prison for new sex crimes, however, was considerably higher than the rate for non-sex offenders, 1.7% compared to 0.6%.

11

Return to prison with a new sentence - 746 offenders with a prior DOC sentence for a sex-related crime

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| No history | 13652 | 6864 | 50.3% | 1513 | 11.1% | 10 | 0.1% | 86 | 0.6% |
| Prior history | 746 | 300 | 40.2% | 70 | 9.4% | 69 | 9.2% | 13 | 1.7% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

- The 13 sex offenders who were sentenced to prison for new sex crimes were convicted on a range of charges. Five of the thirteen were sentenced for crimes against children. All of these sex offenders had DOC Sex Treatment Scores indicating that they had committed contact crimes with their victims prior to being released in 2005. Four of the 13, those with scores of 4, had prior criminal sexual histories involving more than one victim.

New prison sentences - 746 offenders with a prior sex-related prison sentence

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense | |
|---|---|---|---|---|
| Offender 1 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY | F |
| Offender 2 | 3 | 53A186 | PUBLIC INDECENCY | BM (2 Counts) |
| Offender 3 | 3 | 53A186 | PUBLIC INDECENCY | BM |
| Offender 4 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F (2 counts) |
| Offender 5 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 6 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE | |
| Offender 7 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| Offender 8 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE | F |
| Offender 9 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 10 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 11 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE | |
| Offender 12 | 3 | 53A196E | ILL POSSESS CHILD PORN 2ND DEG | F |
| | | 53A196 | OBSCENITY AS TO MINORS | F |
| Offender 13 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE | |

- In addition to tracking new arrests, convictions and prison sentences, this study also looked at 5-year recidivism rates for any new reincarceration. Most reincarceration events fall into three categories: 1) readmissions as pre-trial detainees facing new charges  2) remands for technical violations and criminal violations while on community supervision, and 3) returns to prison to begin a new prison sentence. Within 5 years of release, more than two-thirds of all offenders released in 2005 had been readmitted to prison, for at least one night.

12

**Return to prison within 5 years**

| Offender group | Males | Returned to prison w/in 5 years | Returned to prison, rate |
|---|---|---|---|
| No sex sentence history | 13652 | 9270 | 67.9% |
| Sex sentence history | 746 | 513 | 68.8% |
| Total cohort | 14398 | 9783 | 67.9% |

- While the overall recidivism rate of both groups was remarkably similar, the initial pathway back into prison for the 746 sex offenders was significantly different than the pattern for the larger, non-sex group. The following table contains the 5-year recidivism rates for both groups. The table also identifies the type of readmission event associated with that first prison return. Among the 746 sex offenders, 77% returned to prison as pre-trial detainees, i.e., facing new charges. In contrast, only 57% of non-sex offenders were readmitted to prison as pre-trial defendants. The higher rate of pre-trial detentions among sex offenders may have been driven by higher rates of arrest for Violations of Probation and higher bonds levied against former sex offenders.

**Return readmission, by type, to prison within 5 years**

| Readmit reason | Entire cohort | No sex sentence history | No sex sentence history, rate by type | Sex sentence history | Sex sentence history, rate by type |
|---|---|---|---|---|---|
| New charges, unsentenced | 5697 | 5301 | 57% | 396 | 77% |
| Technical violation, remand | 1348 | 1303 | 14% | 45 | 9% |
| New prison sentence | 1028 | 993 | 11% | 35 | 7% |
| Criminal violations, remand | 940 | 921 | 10% | 19 | 4% |
| All other admit types | 770 | 752 | 8% | 18 | 4% |
| Total readmitted | 9783 | 9270 | 100% | 513 | 100% |
| Offenders in group | 14398 | 13652 | | 746 | |
| Rate returing to prison, % | 67.9% | 67.9% | | 68.8% | |
| Offenders not readmitted | 4615 | 4382 | | 233 | |

- Among non-sex offenders returning to prison, 24% first returned for a technical or criminal violation. Among the 513 sex offenders who were returned to prison within 5 years, only 13% were remanded for criminal or technical violations. The low remand rate for sex offenders is certainly related to the fact that only a low percentage of sex offenders, compared to other offenders, were released to community supervision programs in 2005.

- In 2005, only 37% of non-sex offenders completed their sentences in prison. In contrast, 79% of the 746 sex offenders featured here were discharged directly from a prison facility at the end of their sentences (EOS). The reason the EOS discharge rate was so

high for sex offenders reflects two simple facts: 1) the DOC did not release TS-eligible sex offenders into the community and 2) sex offenders were not accepted in most of the DOC's residential, halfway house network.

- Although the reasons that offenders in both groups were first readmitted to prison varied considerably, the rate at which they were readmitted was remarkably consistent. By the 22nd month following their 2005 releases, 50% of all members of either group had been readmitted to prison for at least one night.



# Recidivism among sex-offender subgroups

- The appendices, at the back of this report, contain recidivism findings for five sex offender sub-groups that were identified during the course of this research. These groups, like the 746 offenders featured in the previous section, were culled from the 14,398-man cohort that was released from prison in 2005. There were solid methodological reasons for evaluating the recidivism rates for five over-lapping sex offender groupings. Perhaps most importantly, it provided an opportunity to test whether different criteria used in the identification of sex offenders would produce different recidivism outcomes.

- The vast majority of criminal cases disposed in state courts each year are the product of a near-ubiquitous plea-negotiation process. Prosecutors and defense attorneys wrestle over evidence, charges, dispositions and sanctions, each seeking to maximize the interests of public safety on one side and the interests of the defendant on the other. One unpleasant consequence of this system is that a significant but undetermined number of men who have committed sex crimes avoid convictions on sex-related charges each and every year. As described later (see Appendix, page A-22), there is some evidence that some of these men present a high risk of committing new sex

14

crimes although they are not required to register with the state's sex offender registry. Nor are they compelled to participate in sex offender treatment programs.

- In order to test the intersection between actual offender outcomes and court-disposition outcomes, five sex offender subgroups were isolated in a manner that allowed the study to test whether criminal, sexual recidivism rates varied by group criteria. The five subgroups that were created were:
    - 1,395 men who had had a prior arrest for a sex-related offense
    - 896 men who had a prior conviction for a sex-related offense
    - 746 men who had served a prison sentence for a sex-related offense before being released in 2005
    - 423 men, a subset of the 746, whose last prison sentence before release was for a sex-related offense, and
    - 1,229 men who were assigned Sex Treatment Scores of 2 or higher by the Department of Correction prior to their 2005 release or discharge.

- Because of overlaps, a total of 1,712 offenders, in the 14,398-man cohort, met at least one sex offender criterion. Differentiating different groupings of sex offenders allowed the study to compare outcomes for offenders who were a) charged with sex crimes but not convicted, b) convicted for sex offenses but not incarcerated, and c) identified by the DOC as sex offenders but had no conviction history for a sex offense. If the criminal justice system operated in an ideal way, we would expect that criminal, sexual recidivism rates of persons arrested for sex crimes but not convicted would be lower than the rates for offenders who were convicted of sex crimes. Further, we would expect that that the criminal sexual recidivism rates for, both, arrested and conviction groups would be lower still than for groups of offenders who had been convicted and sentenced to prison for sex-related offenses.

- The following table contains data that compares the 5-year recidivism data for offenders receiving new prison sentence for new offenses. The 746-man sex offender group, highlighted in the previous section, is included here for the sake of continuity. The last column on the right contains the recidivism rate for offenders who received prison sentences for new sex-crimes committed after they were released form prison in 2005.

15

Return to prison with a new sentence - by sex offender flag group

| Offender group | Males in group | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| Prior arrest, sex-related | 1395 | 637 | 45.7% | 172 | 12.3% | 68 | 4.9% | 33 | 2.4% |
| Prior conviction, sex-related | 896 | 371 | 41.4% | 94 | 10.5% | 63 | 7.0% | 17 | 1.9% |
| Sentence history, sex-related | 746 | 300 | 40.2% | 70 | 9.4% | 69 | 9.2% | 13 | 1.7% |
| Last sentence, sex-related | 423 | 120 | 28.4% | 30 | 7.1% | 34 | 8.0% | 9 | 2.1% |
| Sex treatment score: 2 - 5 | 1229 | 542 | 44.1% | 138 | 11.2% | 73 | 5.9% | 28 | 2.3% |
| STS = 1 | 12904 | 6563 | 50.9% | 1437 | 11.1% | 6 | 0.0% | 71 | 0.6% |
| STS = 2 | 100 | 55 | 55.0% | 12 | 12.0% | 0 | 0.0% | 6 | 6.0% |
| STS = 3 | 983 | 431 | 43.8% | 113 | 11.5% | 65 | 6.6% | 18 | 1.8% |
| STS = 4 | 144 | 56 | 38.9% | 13 | 9.0% | 8 | 5.6% | 4 | 2.8% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

- According to this analysis, arrest on a prior sex charge was the single best predictor of being sentenced to prison for a new sex crime. Of the 1,395 offenders who had been arrested on sex charges before 2005, 2.4% were sentenced to prison for sex offenses within 5 years. This compares with a 1.9% rate among offenders who had been convicted for a sex crime in the past, and a 1.7% rate for offenders who had served a prison sentence for sex crimes in the past. This finding warrants further study. It suggests that conviction and incarceration for a sex crime exert a positive impact on reducing future sex crimes.

- Among the sex offender grouping criteria, the DOC's Sex Treatment Score was the 2nd best predictor of sexual recidivism. Among the 1,229 offenders with Sex Treatment Scores of 2 or higher, 2.3% were sentenced to prison for new sex offenses. The Sex Treatment Score's predictive capacity is certainly related to the fact that scoring is based not only on conviction history but also on assessments of police reports, pre-sentence investigations and other information that can provide a more complete and thorough understanding of the nature and context of an offender's crimes.

- A comparison of the recidivism rates among sex offenders with different Sex Treatment Scores revealed significant variability in rates between sex offender groups. Six percent (6%) of offenders with Sex Treatment Scores of 2 were returned to prison within 5 years on new sex charges. A treatment score of 2 indicates a non-contact sex offender. Many of these offenders had been charged, in the past, with public indecency, i.e., a crime associated with exhibitionists. The next highest recidivism rate, 2.8%, was found among prisoners with Treatment scores of 4, an indication that they had a prior sexual criminal history involving more than one victim.

## Releases and discharges in 2005

- Most inmates leaving prison in Connecticut undergo a period of DOC supervision in the community prior to completing of their sentences. In 2005, only 39% of offenders completed their prison sentences while in a prison facility. Most were released to community-based programs, like parole and transitional supervision (TS), where they could be observed and supervised as they re-acclimated to life outside prison walls. Among sex offenders, the pattern was much different. In 2005, 79% of 746 sex offenders who has served a prison term for a sex crime left prison at the completion of their sentences (EOS). In other words, these offenders were discharged directly into the community without any further DOC engagement. Almost 50% of the sex offenders who left prison at the end of their sentences were placed on probation.

Major release and discharge types in 2005, males

| Releases and discharges | All offenders | No sex sentence | No sex sentence, % | Sex sentence history | Sex sentence history, % |
|---|---|---|---|---|---|
| End of sentence (EOS) | 5631 | 5045 | 37% | 586 | 79% |
| Release to TS | 2033 | 2030 | 15% | 3 | 0% |
| Release to Parole | 1778 | 1672 | 12% | 106 | 14% |
| Release to Furlough | 1752 | 1748 | 13% | 4 | 1% |
| Release to HWH | 1543 | 1540 | 11% | 3 | 0% |
| Discharge to Special Parole | 256 | 236 | 2% | 20 | 3% |
| All others | 1405 | 1381 | 10% | 24 | 3% |
| Total | 14398 | 13652 | 100% | 746 | 100% |

- In the wake of the Cheshire murders in 2007, significant structural changes were implemented at the Board of Pardons and Parole. Today, every parole-eligible offender, who does not waive the right to parole, has their case heard by a three-person panel from the Board of Pardons and Parole. The panel interviews every offender and reviews prison records, police reports and pre-sentence investigation reports before deciding when or if the offender will be released, and what conditions and restrictions will be applied to the offender's community supervision plan.

- Anecdotal evidence suggests that a significant number of parole eligible sex-offenders who have been granted parole complete their sentence in prison because they lack sponsors and/or appropriate housing. The evidence also suggests that some offenders, with long sentences and parole-eligibility at 85%, waive parole because they prefer to complete their entire prison sentences and avoid the restrictions and stipulations that would be placed on them as parolees.

17

- Among all the cases that members of the Board of Pardons and Parole (BOPP) consider for release to parole, sex offender cases weigh most heavily on them.  Despite the fact that BOPP members are provided with packets of information that include evidence-based actuarial assessments of offender risk, given the nature of the sex crimes they review, Board members often find it difficult to decide cases solely on actuarial assessments.  Board members also expressed an interest in seeing evidence concerning the efficacy of prison- and community-based treatment programs for parole-eligible sex offenders.

- Correctional Managed Health Care (CMHC), at UConn, has been the sole provider of programs to treat sex-offenders incarcerated by the Department of Correction for over a decade.  At the time of this analysis, it could not be determined where the data on offender participation in these programs resides.  As a result, the state cannot make any determination about the efficacy of the programming provided to sex offenders in Connecticut prisons.

## The Sex Offender Registry

Offenders who are included on the state's Sex Offender Registry (SOR) appear there because they have been convicted for specific criminal offenses.  The impact of the Registry on preventing new sex crimes is unknown.  By statute (CGS §§ 54-250-54-261), the Registry, which is maintained by the Department of Emergency Services & Public Protection, does not consider or assess the risk of re-offense for individuals that it lists.  Nor does the Department make any determination that an individual included on the Registry is currently dangerous.  According to the Department's website, "individuals listed on the registry are included solely by virtue of their conviction record and state law.  The Department's main purpose is to make the information more accessible to the public but not to warn about any specific individual threat or risk."

- Connecticut does not have a reliable mechanism to distinguish its high-risk sex offender population from the low-risk population on the registry.  Although static and dynamic assessments are performed on many sex offenders, this information is not collected and synthesized in a manner that can be used to track or evaluate the quality of the treatment, management and supervision of the state's sex offender population.

- In recent years, surrounding states have adopted tiered registry-system based on assessments of offender risk in addition to conviction histories.
- Relying solely on criminal conviction histories does not guarantee that all offenders who pose a risk of committing new sex-related crime are identified and managed appropriately. In the state's criminal justice system, where negotiated plea agreements are the norm, significant numbers of defendants who are charged with sex offenses are able to "plead out" to other, non-sexual charges and thus avoid the SOR requirements. In this study, we identified 1,410 men, out of 14,398 offenders who were released from prison in 2005, who had been arrested and charged with a sex-related crime prior to their 2005 release. 1,395 of these offenders faced a court disposition on a docket containing at least one sex-related charge. In those dispositions, 1,150 offenders were convicted: 896 for a sex-related offense, 254 for a non-sexual crime that appeared on the same docket (See Appendix page A-4).

- In 2007, the CT Legislature established a Risk Assessment Board (HB 7408) to assign "weights to various risk factors including, but not limited to, the seriousness of the offense, the offender's prior offense history, the offender's characteristics, the availability of community supports, whether the offender has indicated- or credible evidence in the record indicates -that the offender will reoffend if released into the community and whether the offender demonstrates a physical condition that minimizes the risk of reoffending, and specifies the risk level to which offenders with various risk assessment scores shall be assigned." (See Appendix page A-22)

## A final caveat

- This study is based on data for offenders released from prison during 2005. Two years later, in July 2007, two parolees committed one of the most infamous crimes in recent state history, the murderous home invasion at the Petit-family home in Cheshire. As anyone familiar with Connecticut knows, the Petit case cast a tremendous shadow over the criminal justice system. In the months following those crimes, the state's parole system stopped functioning, the prison system grew by almost 1,000 inmates and remand rates soared. This study did not attempt to relate its findings with changes in the state's criminal justice system in the months and years following the crimes in Cheshire.

## Advisory Panel

**William Anselmo** is a Chief Probation Officer with the Judicial Branch's Court Support Services Division (CSSD) where he oversees sex offender supervision units. He is responsible for policy development, adherence and implementation and provides support and training to line staff and personnel.

**Charles Barber** is Director of The Connection Institute for Innovative Practice and a Lecturer in Psychiatry at the Yale University School of Medicine. He has written two widely recognized books on mental health, and co-wrote a chapter in *What is Criminology* published in 2011 by Oxford University Press.

**Sergeant Joseph Biela** is a 24 year veteran of the Connecticut State Police and Commanding Officer of the Sex Offender Registry Unit. Sergeant Biela has been assigned to the Sex Offender Registry Unit since November 2007 and supervises the operational and administrative functions of the SOR Unit. The Sex Offender Registry Unit is responsible for the State of Connecticut's Sex Offender Registry public website and for the monitoring and compliance of registry requirements for over 5,400 active registered sex offenders.

**Laura Cordes** is the Executive Director of the Connecticut Sexual Assault Crisis Services, a statewide non-profit coalition of nine community-based sexual assault crisis programs, which provide pre- and post-conviction services to victims of sexual assault and their families. CONNSACS employs a specialized team of advocates who represent victims' interests in the state's sex offender supervision and parole special management units. Ms. Cordes serves on Connecticut's Office of Victim Services Advisory Council, the Commission on the Standardization of the Collection of Evidence in Sexual Assault Investigations, and the Criminal Justice Policy Advisory Commission.

**Eric Ellison** is a Parole Manager and he has served with the Department of Correction since 1989. He currently oversees the Parole and Community Services Division's Special Management Unit. The Unit consists of 10 parole officers and has statewide responsibility for the supervision of 225 sex offenders.

**Patrick Hynes** was appointed as director of the DOC's Best Practices Unit, which was established July 1, 2011. He was previously Director of Programs and Treatment. His responsibility is to assist the DOC to improve the utilization of evidence-based practice.

**David Rentler** is the supervising psychologist at the Board of Pardons and Parole. He conducts clinical and forensic risk assessments, case reviews, and consults with Board Members, the parole community and Board officers and managers on matters relating to the parole decision making process.

**Randall Wallace** is the Program Director for the Center for the Treatment of Problem Sexual Behaviors where he oversees adult sexual offender outpatient treatment and evaluation services, the Day Reporting program for adult sexual offenders transitioning back into the community, Post Conviction Sexual Offender polygraph services, home-based treatment services for juveniles with problem sexual behavior, and the January Center. Dr. Wallace, Psy.D., is a licensed Psychologist and a certified polygraph examiner. He has provided sexual offender treatment and evaluation services for over 20 years.

## Methodological questions

Each year, The Criminal Justice Policy & Planning Division at OPM (CJPPD) is mandated to produce an annual study of recidivism among Connecticut prisoners. In October 2011, Mike Lawlor, OPM Under-Secretary decided that the Division would produce an analysis of recidivism rates of sex offenders leaving Connecticut prisons.

Within a month, an advisory panel of experts was convened to provide guidance over the project. In short order, it was determined that, at a minimum, the study would need to produce an analysis that tracked sex offenders released from prison for at least a five year period. In order to meet the five years criteria, the study chose to gather criminal justice records on 14,398 male offenders who were released or discharged from a sentence at a Connecticut prison during 2005.

In recent years, CJPPD has produced annual studies that track four measures of recidivism among former sentenced prisoners. These measures are 1) new arrests 2) new reincarceration events 3) new convictions, and 4) subsequent returns to prison with a new prison sentence. The analysis has proved to be helpful by establishing baseline recidivism data for the state and by providing insight into some of the factors that contribute to higher rates of recidivism among certain offender sub-groups. In 2009, Department of Correction was able to validate its static assessment instrument, the TPAI, using benchmark recidivism data on 30,000 offenders released in 2004 and 2005.

### The Data

Since the number of female sex offenders is so small, and because the pattern of their criminality is so different from males, female prisoners were not included in the study.

The Department of Correction identified all inmates who were released or discharged during 2005 and provided electronic data on each offender's DOC movement history, sentence history, classification and need scores, and general demographic information. Using this data, the first 2005 prison release or discharge date was identified for each 14,398 offender in the study. This date became the start date against which all subsequent recidivism events would be calculated.

Connecticut is fortunate to have an excellent network that connects state criminal justice agencies. Each month, researchers, information specialists and operations personnel from all state criminal justice agencies meet to share information and discuss opportunities for collaborative research.[2] Because of this network, Department of Correction data for the 14,398 offenders was easily linked with State Police and Judicial Branch data. The Judicial Branch's Court Support Services Division employed probabilistic matching software to

---

[2] Research Workgroup of the state's Criminal Justice Policy and Advisory Commission meets monthly drawing together a select group of IT, research, and operations staff from the Department of Correction, Court Support Services Division, Court Operations, the Board of Pardons and Parole, the State Police, Parole, the Office of the State Public Defender and the Office of Policy and Management. The group is a key component in insuring smooth communications and substantive collaboration between various criminal justice agencies.

produce complete arrest and conviction histories every offender in the study cohort. This data was matched, assembled and delivered within two weeks.

## Research questions

With the data in hand, several methodological questions quickly emerged. The first question concerned the types of events that would be counted as genuine recidivism events. The second question centered on the criteria would be used to identify who, among the 14,398 offenders released in 2005, would be considered as a sex offender. The final major question concerned what criminal charges would be considered as sex crimes.

For the first question, it was recognized that calculating recidivism rates for sex offenders required a significantly different approach from the one that would be used in calculating general recidivism rates for all prisoners. With sex offenders, in addition to knowing when or if they return to the system, it is also critical to identify the circumstances associated with each new arrest or conviction. While the public may not be concerned if a sex offender commits a new drug or property offense, they are certainly concerned about any new sex-related offenses. As a result, it was necessary for the study to differentiate sex-related recidivism events from non-sex-related events. To do so, recidivism events were identified in each of four ways 1) general recidivism for all types of offenses 2) recidivism related to non-compliance with the sex offender registry 3) recidivism related to violations of probation, and 4) recidivism related to new sex offenses.

Defining who would be considered as a sex offender for the purposes of the study posed a different set of challenges. The narrowest legal view would have restricted sex-offenders to individuals who been convicted for a sex offense that required registration on the state's sex-offender registry (SOR). It was clear, however, that significant numbers of offenders, who had participated in sex crimes, had been able to avoid conviction on a sex-related charge through the plea negotiation process. The state's defense attorneys are well aware that their clients are often best served by pleading guilty to substantive non-sexual charges to avoid conviction for a sexual offense that would require special supervision and inclusion on the state's Sex Offender Registry. From their perspective, prosecutors cite the difficulty of taking sex cases to trial as a reason why some defendants avoid conviction for sex crimes. The trade-off for prosecutors is that many defendants who avoid a conviction for a sex charge do plead guilty to non-sexual offenses that carry significant sentences.

For the purposes of this study, five sex offender subgroups were selected from the general population based on relatively simple criteria. All persons who were arrested and charged with a sex offense prior to their 2005 release from prison constituted the largest group. This group of 1,395 offenders included several hundred men who had been arrested and charged but not convicted for sex offenses. The second group was composed of 896 men, a subset of the 1,395, who had been convicted for a sex offense prior to 2005. Not all of these men were incarcerated for their sex-related crimes. The third group consisted of 746 men who had served a prison sentence for a sex crime prior to being released in 2005. The fourth group, a subgroup of the third group, contained 423 men whose last sentence before they were released in 2005 was for a sex-related offense. The final group consisted of 1,229

22

men who had been classified as sex offenders by the CT Department of Correction because they had a Sex Treatment Score of 2 or higher when they were released in 2005.

The following chart illustrates the relationships between each of the five sex offenders groups that were identified by the study.  Of the 1,395 men who were arrested on sex-related offences, only 896 were convicted for sexual offenses.



Significant overlaps existed between offenders in each group.  Out of 14,398 offenders that were released or discharged from prison in 2005, 1,712 met at least one criterion as a presumed, though not necessarily convicted sex offender.  The following table illustrates the overlaps.

Sex offender membership, by criteria

| Criteria met | Sex treatment score > 1 | Prior arrest for a sex crime | Prior conviction for a sex crime | Any sentence for a sex offense | Last sentence sex related | Offenders meeting criteria |
|---|---|---|---|---|---|---|
| 5 | X | X | X | X | X | 406 |
| 4 | X | X | X | X |   | 232 |
| 4 | X | X |   | X | X | 7 |
| 4 |   | X | X | X | X | 5 |
| 3 | X | X | X |   |   | 86 |
| 3 |   | X | X | X |   | 18 |
| 3 | X | X |   | X |   | 10 |
| 3 | X |   |   | X | X | 3 |
| 2 | X | X |   |   |   | 179 |
| 2 |   | X | X |   |   | 149 |
| 2 | X |   |   | X |   | 55 |
| 2 |   | X |   | X |   | 2 |
| 1 |   | X |   |   |   | 301 |
| 1 | X |   |   |   |   | 251 |
| 1 |   |   |   | X |   | 6 |
| 1 |   |   |   | X | X | 2 |
|   | 1229 | 1395 | 896 | 323 | 423 | 1712 |

The final major methodological question centered on what offenses would be considered as sex crime in computing sexual recidivism rates. There was no consensus on whether arrests and convictions for offenses like PATRONIZING A PROSTITUTE (53A-083) or PROSTITUTION (53A-082) should be included in calculating sexual recidivism. Although there were good, solid arguments for excluding these charges from consideration, the study continued to include prostitution-related crimes as sex offenses that counted as recidivism triggers. In subsequent analyses, CJPPD may reconsider using these charges in calculating sexual recidivism rates.

A significant percentage of the sex offenders in the study were rearrested and convicted on charges relating to non-compliance with the state's Sex Offenders Registry. Although the original charges that required inclusion on the registry were no doubt sexual, this study does not include these registry-compliance offenses as sex offenses in computing sexual recidivism. The large number of registry-related arrests and convictions that appeared in the data made it necessary to break these events out separately.

Prior CJPPD recidivism studies contained survival curves for released offenders that showed the rates at which offenders returned to the criminal justice system. In contrast, the recidivism rates reported here were designed to capture any single trigger event that occurred within 5 years (1,826 days) of an offender's 2005 release from prison. All trigger events that occurred within 5 years were used in summary tables.

**Sex offender typologies chart**



Chart produced by Dr. Randall Wallace, Center for the Treatment of Problem Sexual Behaviors

## Recidivism -1,395 offenders with a prior arrest for a sex crime

**New arrest rate - 1,395 offenders with a prior arrest history for a sex offense regardless of conviction status**

| Offender group | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| No prior arrest for sex | 13003 | 10229 | 78.7% | 4905 | 38% | 26 | 0.2% | 218 | 1.7% |
| Prior sex arrest history | 1395 | 1089 | 78.1% | 646 | 46% | 216 | 15.5% | 68 | 4.9% |
| total | 14398 | 11318 | 78.6% | 5551 | 39% | 242 | 1.7% | 286 | 2.0% |

**New conviction rate - 1,395 offenders with any prior (pre-2005 release) arrest history for a sex crime**

| Offender group | Males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| No prior arrests | 13003 | 9014 | 69.3% | 4516 | 34.7% | 17 | 0.1% | 86 | 0.7% |
| Priior sex arrest history | 1395 | 968 | 69.4% | 594 | 42.6% | 129 | 9.2% | 48 | 3.4% |
| total | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

**Return to prison with a new sentence - 1,395 offenders with a prior arrest for a sex-related crime**

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|
| No history | 13003 | 6527 | 50.2% | 1411 | 10.9% | 11 | 0.1% | 66 | 0.5% |
| Prior history | 1395 | 637 | 45.7% | 172 | 12.3% | 68 | 4.9% | 33 | 2.4% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

**Readmissions to prison w/in 5 years, 1,395 offenders with a prior arrest for a sex offense**

| Readmit type | Total | No prior arrest for a sex crime | No prior arrest for a sex crime, % | Prior sex-related arrest history | Prior sex-related arrest history, % |
|---|---|---|---|---|---|
| NEW CHARGES | 5,697 | 5,006 | 38.5% | 691 | 49.5% |
| TECH VIOL | 1,348 | 1,260 | 9.7% | 88 | 6.3% |
| NEW SENT | 1,028 | 947 | 7.3% | 81 | 5.8% |
| CRIM VIOL | 940 | 888 | 6.8% | 52 | 3.7% |
| READMIT CIVIL OR FINE | 216 | 196 | 1.5% | 20 | 1.4% |
| RTN ABSCOND | 194 | 184 | 1.4% | 10 | 0.7% |
| RTN ESC CHARGES | 163 | 158 | 1.2% | 5 | 0.4% |
| OTHER | 83 | 71 | 0.5% | 12 | 0.9% |
| RTN W/O PREJ | 55 | 53 | 0.4% | 2 | 0.1% |
| RTN ESC | 36 | 35 | 0.3% | 1 | 0.1% |
| RTN ESC SENT | 23 | 21 | 0.2% | 2 | 0.1% |
| NO PRISON READMIT | 4,615 | 4,184 | 32.2% | 431 | 30.9% |
| | 14,398 | 13,003 | 100.0% | 1,395 | 100.0% |

26

Sex charges associated w/new prison sentences for the 33 offenders in the 1,395-offender group with a prior sex-related arrest

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense |
|---|---|---|---|
| Offender 1 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 2 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 3 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY  F |
| Offender 4 | 1 | 53A082 | PROSTITUTION        AM |
| Offender 5 | 1 | 53A082 | PROSTITUTION   AM (4 counts) |
| Offender 6 | 3 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 7 | 3 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 8 | 2 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 9 | 3 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) |
| Offender 10 | 2 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) |
| Offender 11 | 2 | 53A186 | PUBLIC INDECENCY  BM (3 Counts) |
| Offender 12 | 1 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 13 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 14 | 1 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 15 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 16 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 17 | 1 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 18 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 19 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE    DF |
| Offender 20 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE    DF |
| Offender 21 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE    DF |
| Offender 22 | 1 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 23 | 1 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 24 | 1 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 25 | 1 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 26 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 27 | 1 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 28 | 2 | 53A196F | ILL POSSESS CHILD PORN 3RD DEG    DF |
|  |  | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
|  |  | 53A196A | EMPLOY MINOR IN OBSCENE PERFORMANCE AF |
|  |  | 53A072 | SEXUAL ASSAULT, 3RD DEGREE    DF |
| Offender 29 | 1 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
|  |  | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 30 | 3 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
|  |  | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 31 | 3 | 53A196E | ILL POSSESS CHILD PORN 2ND DEG    F |
|  |  | 53A196 | OBSCENITY AS TO MINORS    F |
| Offender 32 | 1 | 53A186 | PUBLIC INDECENCY        BM |
|  |  | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 33 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
|  |  | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |

## Recidivism data for 896 offenders with a prior conviction for a sex crime

### New arrest rate - 896 offenders with a prior conviction a sex-related offense

| Offender group | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| No prior arrest for sex | 13502 | 10636 | 78.8% | 5124 | 38% | 38 | 0.3% | 250 | 1.9% |
| Prior sex arrest history | 896 | 682 | 76.1% | 427 | 48% | 204 | 22.8% | 36 | 4.0% |
| total | 14398 | 11318 | 78.6% | 5551 | 39% | 242 | 1.7% | 286 | 2.0% |

### New conviction rate - 896 offenders with any prior (pre-2005 release) conviction for a sex-releated crime

| Offender group | Males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| No prior conviction (sex) | 13502 | 9390 | 69.5% | 4719 | 35.0% | 26 | 0.2% | 106 | 0.8% |
| Prior sex-rel. conviction | 896 | 592 | 66.1% | 391 | 43.6% | 120 | 13.4% | 28 | 3.1% |
| total | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

### Return to prison with a new sentence - 896 offenders with a prior conviction for a sex-related crime

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| No history | 13502 | 6793 | 50.3% | 1489 | 11.0% | 16 | 0.1% | 82 | 0.6% |
| Prior history | 896 | 371 | 41.4% | 94 | 10.5% | 63 | 7.0% | 17 | 1.9% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

### Readmissions to prison w/in 5 years, 896 offenders with a prior conviction for a sex offense

| Readmit type | Total Of Inmate No 2005 | No prior conviction for a sex crime | No prior conviction for a sex crime, % | Prior sex-related conviction history | Prior sex-related conviction history, % |
|---|---|---|---|---|---|
| NEW CHARGES | 5697 | 5245 | 38.8% | 452 | 50.4% |
| TECH VIOL | 1348 | 1294 | 9.6% | 54 | 6.0% |
| NEW SENT | 1028 | 981 | 7.3% | 47 | 5.2% |
| CRIM VIOL | 940 | 911 | 6.7% | 29 | 3.2% |
| READMIT CIVIL OR FINE | 216 | 205 | 1.5% | 11 | 1.2% |
| RTN ABSCOND | 194 | 188 | 1.4% | 6 | 0.7% |
| RTN ESC CHARGES | 163 | 162 | 1.2% | 1 | 0.1% |
| OTHER | 83 | 73 | 0.5% | 10 | 1.1% |
| RTN W/O PREJ | 55 | 55 | 0.4% | | 0.0% |
| RTN ESC | 36 | 36 | 0.3% | | 0.0% |
| RTN ESC SENT | 23 | 23 | 0.2% | | 0.0% |
| NO PRISON READMIT | 4615 | 4329 | 32.1% | 286 | 31.9% |
| | 14398 | 13502 | 100.0% | 896 | 100.0% |

Sex charges associated w/new prison sentences for the 17 offenders in the 896-offender group with a prior sex-related conviction

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense | |
|---|---|---|---|---|
| Offender 1 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| Offender 2 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| Offender 3 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY | F |
| Offender 4 | 1 | 53A082 | PROSTITUTION | AM |
| Offender 5 | 1 | 53A082 | PROSTITUTION  AM (4 counts) | |
| Offender 6 | 3 | 53A186 | PUBLIC INDECENCY | BM |
| Offender 7 | 2 | 53A186 | PUBLIC INDECENCY | BM |
| Offender 8 | 3 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) | |
| Offender 9 | 2 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) | |
| Offender 10 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE | F |
| Offender 11 | 1 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE | F |
| Offender 12 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 13 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 14 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE | DF |
| Offender 15 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE (2 counts) | |
| Offender 16 | 3 | 53A196E | ILL POSSESS CHILD PORN 2ND DEG | F |
| | | 53A196 | OBSCENITY AS TO MINORS | F |
| Offender 17 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR | F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE | |

# Recidivism - 746 offenders with a sentence history for a sex crime

### New arrest rate - 746 offenders with a DOC sentence history for a sex crime

| Offender group | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13652 | 10751 | 78.8% | 5182 | 38.0% | 30 | 0.2% | 259 | 1.9% |
| Sex sentence history | 746 | 567 | 76.0% | 369 | 49.5% | 212 | 28.4% | 27 | 3.6% |
| total | 14398 | 11318 | 78.6% | 5551 | 38.6% | 242 | 1.7% | 286 | 2.0% |

### New conviction rate - 746 offenders with a DOC sentence history for a sex crime

| Offender group | Males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13652 | 9489 | 69.5% | 4772 | 35.0% | 18 | 0.1% | 114 | 0.8% |
| Sex sentence history | 746 | 493 | 66.1% | 338 | 45.3% | 128 | 17.2% | 20 | 2.7% |
| total | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

**Return to prison with a new sentence - 746 offenders with a prior DOC sentence for a sex-related crime**

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| No history | 13652 | 6864 | 50.3% | 1513 | 11.1% | 10 | 0.1% | 86 | 0.6% |
| Prior history | 746 | 300 | 40.2% | 70 | 9.4% | 69 | 9.2% | 13 | 1.7% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

**Readmissions to prison w/in 5 years, 746 offenders with a sentence history for a sex offense**

| Readmit type | Total | No sentence history for sex offenses | No sentence history for sex offenses, % | Offenders w/a sentence history for sex offenses | Offenders w/a sentence history for sex offenses, % |
|---|---|---|---|---|---|
| NEW CHARGES | 5697 | 5301 | 38.8% | 396 | 53.1% |
| TECH VIOL | 1348 | 1303 | 9.5% | 45 | 6.0% |
| NEW SENT | 1028 | 993 | 7.3% | 35 | 4.7% |
| CRIM VIOL | 940 | 921 | 6.7% | 19 | 2.5% |
| READMIT CIVIL OR FINE | 216 | 211 | 1.5% | 5 | 0.7% |
| RTN ABSCOND | 194 | 189 | 1.4% | 5 | 0.7% |
| RTN ESC CHARGES | 163 | 163 | 1.2% | | 0.0% |
| OTHER | 83 | 75 | 0.5% | 8 | 1.1% |
| RTN W/O PREJ | 55 | 55 | 0.4% | | 0.0% |
| RTN ESC | 36 | 36 | 0.3% | | 0.0% |
| RTN ESC SENT | 23 | 23 | 0.2% | | 0.0% |
| NO PRISON READMIT | 4615 | 4382 | 32.1% | 233 | 31.2% |
| | 14398 | 13652 | 100.0% | 746 | 100.0% |

**Sex charges associated w/new prison sentences for the 13 offenders in the 746-offender group with a sex-related sentence history**

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense |
|---|---|---|---|
| Offender 1 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY  F |
| Offender 2 | 3 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) |
| Offender 3 | 3 | 53A186 | PUBLIC INDECENCY   BM |
| Offender 4 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F (2 counts) |
| Offender 5 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 6 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 7 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 8 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 9 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 10 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 11 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 12 | 3 | 53A196E | ILL POSSESS CHILD PORN 2ND DEG    F |
| | | 53A196 | OBSCENITY AS TO MINORS      F |
| Offender 13 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |

## Recidivism - 423 offenders whose last sentence was for a sex crime

### New arrest rate - 423 offenders whose last sentence was a sex crime

| Offender group | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13975 | 11026 | 78.9% | 5341 | 38.2% | 133 | 1.0% | 270 | 1.9% |
| Sex sentence history | 423 | 292 | 69.0% | 210 | 49.6% | 109 | 25.8% | 16 | 3.8% |
| total | 14398 | 11318 | 78.6% | 5551 | 38.6% | 242 | 1.7% | 286 | 2.0% |

### New conviction rate - 423 offenders whose last sentence was sex-related

| Offender group | males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| No sex sentence | 13975 | 9742 | 69.7% | 4919 | 35.2% | 91 | 0.7% | 123 | 0.9% |
| Sex sentence history | 423 | 240 | 56.7% | 191 | 45.2% | 55 | 13.0% | 11 | 2.6% |
| | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

### Return to prison with a new sentence - 423 offenders whose last sentence prior to release was for a sex-related crime

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| No history | 13975 | 7044 | 50.4% | 1553 | 11.1% | 45 | 0.3% | 90 | 0.6% |
| Prior history | 423 | 120 | 28.4% | 30 | 7.1% | 34 | 8.0% | 9 | 2.1% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

### Readmissions to prison w/in 5 years, 423 offenders whose last sentence was sex-related

| Readmit type | Total | Last sentence not sex-related | Last sentence not sex-related, % | Last sentence was sex-related | Last sentence was sex-related, % |
|---|---|---|---|---|---|
| NEW CHARGES | 5697 | 5480 | 39.2% | 217 | 51.3% |
| TECH VIOL | 1348 | 1327 | 9.5% | 21 | 5.0% |
| NEW SENT | 1028 | 1013 | 7.2% | 15 | 3.5% |
| CRIM VIOL | 940 | 934 | 6.7% | 6 | 1.4% |
| READMIT CIVIL OR FINE | 216 | 213 | 1.5% | 3 | 0.7% |
| RTN ABSCOND | 194 | 193 | 1.4% | 1 | 0.2% |
| RTN ESC CHARGES | 163 | 163 | 1.2% | | 0.0% |
| OTHER | 83 | 78 | 0.6% | 5 | 1.2% |
| RTN W/O PREJ | 55 | 55 | 0.4% | | 0.0% |
| RTN ESC | 36 | 36 | 0.3% | | 0.0% |
| RTN ESC SENT | 23 | 23 | 0.2% | | 0.0% |
| NO PRISON READMIT | 4615 | 4460 | 31.9% | 155 | 36.6% |
| | 14398 | 13975 | 100.0% | 423 | 100.0% |

31

Sex charges associated w/new prison sentences for the 9 offenders in the
423-offender group whose last sentence in 2005 was for a sex-related offense

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense |
|---|---|---|---|
| Offender 1 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY  F |
| Offender 2 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 3 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 4 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 5 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE     F |
| Offender 6 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 7 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 8 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR     F (2 counts) |
| Offender 9 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR     F |
|  |  | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |

# Recidivism - 1,229 offenders with Sex Treatment Score of 2 or higher

New arrest rate - 1,229 offenders with DOC sex treatment scores of S-2 or higher

| Sex treatment score | Males | Any new arrest | Any new arrest, rate | Any VOP arrest | VOP arrest rate | Any registry arrest | Registry arrest rate | Any new sex crime arrest | New sex crime arrest rate |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 265 | 136 | 51.3% | 48 | 18.1% |  | 0.0% | 4 | 1.5% |
| S-1 | 12904 | 10222 | 79.2% | 4937 | 38.3% | 12 | 0.1% | 225 | 1.7% |
| S-2 | 100 | 81 | 81.0% | 38 | 38.0% | 2 | 2.0% | 10 | 10.0% |
| S-3 | 983 | 766 | 77.9% | 448 | 45.6% | 195 | 19.8% | 42 | 4.3% |
| S-4 | 144 | 113 | 78.5% | 80 | 55.6% | 33 | 22.9% | 5 | 3.5% |
| S-5 | 2 |  | 0.0% |  | 0.0% |  | 0.0% |  | 0.0% |
| Treatment Sscore >1 | 1229 | 960 | 78.1% | 566 | 46.1% | 230 | 18.7% | 57 | 4.6% |
| total | 14398 | 11318 | 78.6% | 5551 | 38.6% | 242 | 1.7% | 286 | 2.0% |

New conviction rate - 1,229 offenders with DOC sex treatment scores of S-2 or higher

| Sex treatment score | males | Any conviction | Any conviction rate | Any VOP conviction | VOP conviction rate | Any registry conviction | Registry conviction rate | New sex crime conviction | New sex crime conviction rate |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 265 | 107 | 40.4% | 45 | 17.0% |  | 0.0% |  | 0.0% |
| S-1 | 12904 | 9040 | 70.1% | 4537 | 35.2% | 7 | 0.1% | 97 | 0.8% |
| S-2 | 100 | 71 | 71.0% | 34 | 34.0% | 1 | 1.0% | 8 | 8.0% |
| S-3 | 983 | 660 | 67.1% | 420 | 42.7% | 116 | 11.8% | 26 | 2.6% |
| S-4 | 144 | 104 | 72.2% | 74 | 51.4% | 22 | 15.3% | 3 | 2.1% |
| S-5 | 2 |  | 0.0% |  | 0.0% |  | 0.0% |  | 0.0% |
| STS>1 | 1229 | 835 | 67.9% | 528 | 43.0% | 139 | 11.3% | 37 | 3.0% |
| total | 14398 | 9982 | 69.3% | 5110 | 35.5% | 146 | 1.0% | 134 | 0.9% |

**Return to prison with a new sentence - 1,229 offenders with 2005 sex treatment scores higher than 1**

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| STS = 0 or 1 | 13169 | 6622 | 50.3% | 1445 | 11.0% | 6 | 0.0% | 71 | 0.5% |
| STS = 2 through 5 | 1229 | 542 | 44.1% | 138 | 11.2% | 73 | 5.9% | 28 | 2.3% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |

**Return to prison with a new sentence - offenders by sex treatment score**

| Offender group | Males | Any new prison sentence | Any new prison sentence, rate | Any new VOP sentence | Any new VOP sentence, rate | Any registry-related sentence | Any registry-related sentence, rate | New sentence, sex crime | New sentence, sex crime, rate |
|---|---|---|---|---|---|---|---|---|---|
| No score | 265 | 59 | 22.3% | 8 | 3.0% | | 0.0% | | 0.0% |
| STS = 1 | 12904 | 6563 | 50.9% | 1437 | 11.1% | 6 | 0.0% | 71 | 0.6% |
| STS = 2 | 100 | 55 | 55.0% | 12 | 12.0% | | 0.0% | | 6.0% |
| STS = 3 | 983 | 431 | 43.8% | 113 | 11.5% | 65 | 6.6% | 18 | 1.8% |
| STS = 4 | 144 | 56 | 38.9% | 13 | 9.0% | 8 | 5.6% | 4 | 2.8% |
| STS = 5 | 2 | 0 | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| Total cohort | 14398 | 7164 | 49.8% | 1583 | 11.0% | 79 | 0.5% | 99 | 0.7% |
| STS = 2 through 5 | 1229 | 542 | 44.1% | 138 | 11.2% | 73 | 5.9% | 28 | 2.3% |

**Readmissions to prison w/in 5 years, 1,229 offenders with sex treatment scores above 1**

| Readmit type | Total Of Inmate No 2005 | Sex treatment score lower than 2 | Sex treatment score lower than 2, % | Sex treatment scores: 2 through 5 | Sex treatment scores: 2 through 5, % |
|---|---|---|---|---|---|
| NEW CHARGES | 5697 | 5043 | 38.3% | 654 | 53.2% |
| TECH VIOL | 1348 | 1292 | 9.8% | 56 | 4.6% |
| NEW SENT | 1028 | 971 | 7.4% | 57 | 4.6% |
| CRIM VIOL | 940 | 908 | 6.9% | 32 | 2.6% |
| READMIT CIVIL OR FINE | 216 | 199 | 1.5% | 17 | 1.4% |
| RTN ABSCOND | 194 | 179 | 1.4% | 15 | 1.2% |
| RTN ESC CHARGES | 163 | 163 | 1.2% | | 0.0% |
| OTHER | 83 | 71 | 0.5% | 12 | 1.0% |
| RTN W/O PREJ | 55 | 55 | 0.4% | | 0.0% |
| RTN ESC | 36 | 36 | 0.3% | | 0.0% |
| RTN ESC SENT | 23 | 23 | 0.2% | | 0.0% |
| NO PRISON READMIT | 4615 | 4229 | 32.1% | 386 | 31.4% |
| | 14398 | 13169 | 100.0% | 1229 | 100.0% |

Readmissions to prison w/in 5 years, by sex treatment score

| Readmit type | Total | Treatment score null or S1 | Treatment score: S2 | Treatment score: S3 | Treatment score: S4 | Treatment score: S5 |
|---|---|---|---|---|---|---|
| NEW CHARGES | 5697 | 5043 | 54 | 519 | 81 | |
| TECH VIOL | 1348 | 1292 | 7 | 42 | 7 | |
| NEW SENT | 1028 | 971 | 5 | 47 | 5 | |
| CRIM VIOL | 940 | 908 | 1 | 27 | 4 | |
| READMIT CIVIL OR FINE | 216 | 199 | 1 | 16 | | |
| RTN ABSCOND | 194 | 179 | 2 | 11 | 2 | |
| RTN ESC CHARGES | 163 | 163 | | | | |
| OTHER | 83 | 71 | 1 | 9 | 2 | |
| RTN W/O PREJ | 55 | 55 | | | | |
| RTN ESC | 36 | 36 | | | | |
| RTN ESC SENT | 23 | 23 | | | | |
| NO PRISON READMIT | 4615 | 4229 | 29 | 312 | 43 | 2 |
| Total | 14398 | 13169 | 100 | 983 | 144 | 2 |
| | % | % | % | % | % | % |
| NEW CHARGES | 39.6% | 38.3% | 54.0% | 52.8% | 56.3% | 0.0% |
| TECH VIOL | 9.4% | 9.8% | 7.0% | 4.3% | 4.9% | 0.0% |
| NEW SENT | 7.1% | 7.4% | 5.0% | 4.8% | 3.5% | 0.0% |
| CRIM VIOL | 6.5% | 6.9% | 1.0% | 2.7% | 2.8% | 0.0% |
| NO PRISON READMIT | 32.1% | 32.1% | 29.0% | 31.7% | 29.9% | 100.0% |

Sex charges associated w/new prison sentences for the 28 offenders in the
1,229-offender group whose sex treatment score were higher than S1

| Offender | DOC Sex Treatment Score | Statute | Sentence Offense |
|---|---|---|---|
| Offender 1 | 4 | 53A196D | POSSESSING CHILD PORNOGRAPHY   F |
| Offender 2 | 3 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) |
| Offender 3 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 4 | 3 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 5 | 3 | 53A088 | PROMOTING PROSTITUTION, 3RD DEGREE  DF |
| Offender 6 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE   F   (2 counts) |
| Offender 7 | 3 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 8 | 2 | 53A186 | PUBLIC INDECENCY  BM (3 Counts) |
| Offender 9 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR  F (2 counts) |
| Offender 10 | 3 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 11 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 12 | 2 | 53A196D | POSSESSING CHILD PORNOGRAPHY  F |
| Offender 13 | 2 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 14 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 15 | 2 | 53A186 | PUBLIC INDECENCY        BM |
| Offender 16 | 3 | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| Offender 17 | 2 | 53A186 | PUBLIC INDECENCY  BM (2 Counts) |
| Offender 18 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 19 | 4 | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 20 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 21 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| Offender 22 | 3 | 53A071 | SEX ASSAULT, SECOND DEGREE    F |
| Offender 23 | 3 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 24 | 4 | 53A072A | SEXUAL ASSAULT, 3RD DEGREE   DF |
| Offender 25 | 2 | 53A072 | SEXUAL ASSAULT, 3RD DEGREE   DF |
| | | 53A070 | SEXUAL ASSAULT, 1ST DEGREE        F |
| | | 53A196F | ILL POSSESS CHILD PORN 3RD DEG   DF |
| | | 53A196A | EMPLOY MINOR IN OBSCENE PERFORMANCE AF |
| Offender 26 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |
| Offender 27 | 3 | 53A196E | ILL POSSESS CHILD PORN 2ND DEG    F |
| | | 53A196 | OBSCENITY AS TO MINORS        F |
| Offender 28 | 3 | 53-021* | INJURY OR RISK OF INJURY TO MINOR   F |
| | | 53A073A | SEXUAL ASSAULT, 4TH DEGREE |

## Summary of new prison sentences for sex crimes, by sex offender sub group

Sex-offenses, by crime type, resulting in new prison sentences

| Crime group | Offense | No prior sex arrest | Sex arrest history | No prior sex conviction | Sex conviction history | No sex-related DOC sentence | DOC sex related sentence history | Last DOC sentence not sex-related | Last DOC sentence sex-related | Sex treatment score <2 | Sex treatment scores: 2 through 5 | All males |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sex assault 1 | SEXUAL ASSAULT, 1ST DEGREE  F | 17 | 5 | 21 | 1 | 22 | | 22 | | 16 | 6 | 22 |
| | SEXUAL ASSAULT 1ST DEGREE - AGGRVTD  F | 2 | | 2 | | 2 | | 2 | | 2 | | 2 |
| | RAPE, FIRST DEGREE  BF | | 1 | 1 | | 1 | | 1 | | | 1 | 1 |
| | **Sub-total** | 19 | 6 | 24 | 1 | 25 | 0 | 25 | 0 | 18 | 7 | 25 |
| Sex assault 2 | SEXUAL ASSAULT, SECOND DEGREE  F | 19 | 4 | 22 | 1 | 22 | 1 | 22 | 1 | 21 | 2 | 23 |
| | RAPE, SECOND DEGREE  CF | 1 | | 1 | | 1 | | 1 | | 1 | | 1 |
| | **Sub-total** | 20 | 4 | 23 | 1 | 23 | 1 | 23 | 1 | 22 | 2 | 24 |
| Other sex assault | SEXUAL ASSAULT, 3RD DEGREE  DF | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 5 |
| | SEXUAL ASSAULT, 4TH DEGREE | 11 | 9 | 17 | 3 | 17 | 3 | 18 | 2 | 16 | 4 | 20 |
| | **Sub-total** | 13 | 12 | 19 | 6 | 19 | 6 | 20 | 5 | 18 | 7 | 25 |
| Crimes against minors | INJURY OR RISK OF INJURY TO MINOR  F | 10 | 5 | 12 | 3 | 10 | 5 | 11 | 4 | 9 | 6 | 15 |
| | EMPLOY MINOR IN OBSCENE PERFORMANCE  AF | | 1 | | 1 | | 1 | 1 | | | 1 | 1 |
| | OBSCENITY AS TO MINORS  F | | 1 | 1 | | 1 | | 1 | | | 1 | 1 |
| | **Sub-total** | 10 | 7 | 13 | 4 | 11 | 6 | 13 | 4 | 9 | 8 | 17 |
| Prostitution related | PROSTITUTION  AM | 2 | 5 | 2 | 5 | 7 | | 7 | | 7 | | 7 |
| | PATRONIZING A PROSTITUTE  AM | 1 | | 1 | | 1 | | 1 | | 1 | | 1 |
| | PROMOTING PROSTITUTION, 2ND DEGREE  CF | 1 | | 1 | | 1 | | 1 | | 1 | | 1 |
| | PATRONIZING A PROSTITUTE FROM A MV | 1 | | 1 | | 1 | | 1 | | 1 | | 1 |
| | PROMOTING PROSTITUTION, 3RD DEGREE  DF | 4 | | 4 | | 4 | | 4 | | 3 | 1 | 4 |
| | **Sub-total** | 9 | 5 | 9 | 5 | 14 | 0 | 14 | 0 | 13 | 1 | 14 |
| Child pornography | POSSESSING CHILD PORNOGRAPHY  F | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 2 | 2 |
| | ILL POSSESS CHILD PORN 3RD DEG  DF | 3 | 1 | 4 | | 4 | 1 | 4 | 1 | 3 | 1 | 4 |
| | ILL POSSESS CHILD PORN 2ND DEG  F | | 1 | 1 | | 1 | | 1 | | | 1 | 1 |
| | **Sub-total** | 4 | 3 | 5 | 2 | 5 | 2 | 6 | 1 | 3 | 4 | 7 |
| Indecency/voyeurism | PUBLIC INDECENCY  BM | 6 | 11 | 11 | 6 | 14 | 3 | 17 | | 6 | 11 | 17 |
| | **Sub-total** | 6 | 11 | 11 | 6 | 14 | 3 | 17 | | 6 | 11 | 17 |
| **Total** | | 81 | 48 | 104 | 25 | 111 | 18 | 118 | 11 | 89 | 40 | 129 |
| | Offenders in group | 13,003 | 1,395 | 13,502 | 896 | 13,652 | 746 | 13,975 | 423 | 13,169 | 1,229 | 14,398 |

36

## General criminality among offenders who were released in 2005

Slightly more than 5% of the 14,398 male sentenced offenders who left Connecticut prisons in 2005 had ever served a prison sentence in the state for a sex-related offense. Among the prisoners who left prison in 2005, 49.4% had served at least one sentence for violating the terms of their probation. Forty-six percent (46%) of offenders had served time in prison for a drug charge. Nineteen percent (19%) of

| Sentences by major offense type, 2005 release cohort | | |
|---|---|---|
| | Males | Rate: |
| Sentenced offender | 14398 | 100.0% |
| Violation of probation | 7,108 | 49.4% |
| Drug offenders | 6,622 | 46.0% |
| DUI offenses | 2,802 | 19.5% |
| Burglary charges | 2,304 | 16.0% |
| Robbery 1 or Robbery 2 | 1,101 | 7.7% |
| Viol. of a restrain. or prot. order | 747 | 5.2% |
| Any sex-related offense | 746 | 5.2% |
| Sex assault 1 or Rape | 195 | 1.4% |
| Illegal sexual contact - minor | 196 | 1.4% |

offenders released in 2005 had served a prior sentence for driving under the influence of alcohol or drugs. Among the 746 offenders who had ever served a sentence for a sex-related offense, 195 had been convicted for Sexual Assault 1 or Rape. One hundred ninety-six (196) had been convicted for Illegal sexual contact with a minor (Risk of Injury 53-021*).

The sentence histories of offenders that had ever been convicted for one of three specific sex crimes (Sex Assault 1, Risk of Injury to a Minor (sexual), and Public Indecency) were analyzed to determine whether significant differences could be detected in the general pattern of non-sexual criminal activity between different sex offender types. Conviction for one of these offenses was used as a proxy to distinguish rapists from child molesters and non-contact exhibitionists. The analysis did identify significant differences in the overall pattern of criminality for different offender types.

Among the 35 offenders who had been convicted for public indecency (exhibitionists) the incidence of drug- or alcohol-related offenses was much higher than for the other two groups. Exhibitionists also had the highest rates of sentencing for Violations of Probation (80%). Among the 195 offenders who had been convicted for Sex Assault 1 (rapists), 29.2% had also served a prison sentence for a burglary-related crime; 13.3% had served a sentence for robbery. The high incidence of burglaries and robberies among this group indicates both a heightened willingness to use force and overstep boundaries. Among

| Offenses in common among 746 offenders with a sentence history involving a sex crime | | | | | | |
|---|---|---|---|---|---|---|
| | Risk of injury to a minor (sexual) | Risk of injury to a minor (sexual), % | Sexual assault 1 | Sexual assault 1, % | Public indecency | Public indecency, % |
| Offenders with sentence histories for | 196 | 100.0% | 195 | 100.0% | 35 | 100.0% |
| Drug offenses | 24 | 12.2% | 53 | 27.2% | 11 | 31.4% |
| DUI offenses | 13 | 6.6% | 20 | 10.3% | 5 | 14.3% |
| Burglary offenses | 8 | 4.1% | 57 | 29.2% | 6 | 17.1% |
| Robberies | 5 | 2.6% | 26 | 13.3% | 0 | 0.0% |
| Violation of probation | 68 | 34.7% | 115 | 59.0% | 28 | 80.0% |
| Court order violation* | 4 | 2.0% | 5 | 2.6% | 2 | 5.7% |

offenders convicted for Risk of Injury to a Minor (sexual), only 4.1% had served sentences for burglary and only 2.6% has been convicted of a robbery. Among the entire population of male prisoners released in 2005, 16% had been convicted of burglary-related charges and less than 8% had been convicted for a robbery.

37

## Sex offenders, parole and special parole

The use of special parole for sex offenders in 2005

|  | Offenders in group | Offenders discharged to special parole in 2005 | Sex offenders discharged to special parole in 2005 | Sex offenders as a percent of offenders discharged to special parole | Percentage of sex offenders discharged to special parole |
|---|---|---|---|---|---|
| Prior arrest on a sex-related charge | 1395 | 358 | 38 | 10.6% | 2.7% |
| Prior conviction on a sex-related charge | 896 | 358 | 31 | 8.7% | 3.5% |
| Any prior sex-related sentence | 746 | 358 | 31 | 8.7% | 4.2% |
| Last sentence on a sex-related charge | 423 | 358 | 15 | 4.2% | 3.5% |
| Sex Treatment score 2 through 5 | 1229 | 358 | 43 | 12.0% | 3.5% |
| Any Sex offender flag | 1712 | 358 | 52 | 14.5% | 3.0% |

In 2005, 1,776 offenders were released from prison to parole. Less than 10% of all offenders release to parole had sex treatment scores higher than 1. The following table shows the remand rates for offenders by their DOC Sex treatment scores.

Parolee prison readmits by DOC Sex Treatment Score, first prison readmission

| First prison readmit | Released to parole in 2005* | DOC Sex treatment score | | | | |
|---|---|---|---|---|---|---|
|  |  | S:1 | S:2 | S:3 | S:4 | S:2 through S:4 |
| Technical violation | 413 | 370 | 5 | 34 | 4 | 43 |
| Criminal violation | 388 | 364 | 1 | 21 | 2 | 24 |
| Readmit - pre-trial | 359 | 324 | 3 | 24 | 8 | 35 |
| Absconder returned | 115 | 106 | 1 | 7 | 1 | 9 |
| New prison sentence | 47 | 45 |  | 1 | 1 | 2 |
| No readmission w/in 5 years | 424 | 384 | 1 | 29 | 10 | 40 |
| All other retuns | 30 | 27 | 0 | 2 | 1 | 3 |
| Total | 1776 | 1620 | 11 | 118 | 27 | 156 |
| First prison readmit, % |  |  |  |  |  |  |
| Technical violation | 23.3% | 22.8% | 45.5% | 28.8% | 14.8% | 27.6% |
| Criminal violation | 21.8% | 22.5% | 9.1% | 17.8% | 7.4% | 15.4% |
| Readmit - pre-trial | 20.2% | 20.0% | 27.3% | 20.3% | 29.6% | 22.4% |
| Absconder returned | 6.5% | 6.5% | 9.1% | 5.9% | 3.7% | 5.8% |
| New prison sentence | 2.6% | 2.8% | 0.0% | 0.8% | 3.7% | 1.3% |
| No readmission w/in 5 years | 23.9% | 23.7% | 9.1% | 24.6% | 37.0% | 25.6% |
| All other retuns | 1.7% | 1.7% | 0.0% | 1.7% | 3.7% | 1.9% |
| Total, % | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |

* Two offenders released to parole had no sex treatment scores. Neither was readmitted.

## Age at first arrest for a sex crime

All prior arrest records for the entire 2005-release cohort was collected and analyzed to determine whether any relationship existed between the offender's age and the crime type.  The data was used to identify the first sex offense-related arrest in each offender's criminal history.  The data was then grouped comparing the age distribution of offenders by offense type.

**Age at first arrest for a sex crime, by arrest charge**

| Age at first sex crime arrest | Arrest charge | | | | | |
|---|---|---|---|---|---|---|
| | Sex Assault 1 | Sex assault 2 | Sex Assault 4 | III. Sexual Contact | Sex crimes against minors, grouped* | Public Indecency |
| 10 to 14 | 7 | 1 | 4 | 5 | 6 | 0 |
| 15 to 19 | 81 | 80 | 78 | 91 | 149 | 16 |
| 20 to 24 | 90 | 61 | 60 | 56 | 100 | 18 |
| 25 to 29 | 63 | 23 | 34 | 28 | 53 | 22 |
| 30 to 34 | 66 | 18 | 41 | 31 | 60 | 33 |
| 35 to 39 | 48 | 17 | 35 | 30 | 52 | 17 |
| 40 to 44 | 19 | 8 | 25 | 20 | 39 | 18 |
| 45 to 49 | 4 | 4 | 11 | 6 | 9 | 6 |
| 50 to 54 | 5 | 4 | 9 | 10 | 17 | 1 |
| 55 to 59 | 2 | 0 | 4 | 5 | 7 | 1 |
| 60 to 64 | 2 | 1 | 2 | 4 | 8 | 0 |
| 65 and older | 0 | 1 | 3 | 3 | 5 | 2 |
| Total | 387 | 218 | 306 | 289 | 505 | 134 |
| Under 25 | 178 | 142 | 142 | 152 | 255 | 34 |
| Under 25, % | 46% | 65% | 46% | 53% | 50% | 25% |
| 25 to 39 | 177 | 58 | 110 | 89 | 165 | 72 |
| 25 to 39, % | 46% | 27% | 36% | 31% | 33% | 54% |
| Over 39 | 32 | 18 | 54 | 48 | 85 | 28 |
| Over 39, % | 8% | 8% | 18% | 17% | 17% | 21% |

*Includes illegal sexual contact,  sex assault 1- minor, sex assault 2 - minor, sex assault 4 - minor, enticing a minor & promoting or employing a minor in an obscene performance*

Public Indecency was the only sexual offense where men under the age of 25 made up less that 45% of the offenders.  Sixty-five percent of men accused of Sexual Assault 2 were under the age of 25.  The data is based on the criminal arrest histories of the 1,395 offenders who had a prior arrest for a sex-related offense.

Among offenders arrested for Sexual Assault 1, the peak age group was between the ages of 20 to 24.  Among offenders arrested for Sexual Assault 2, the peak age group was 15 to 19.  The 15 to 19 age group was also the peak age group among offenders arrested for crimes against children.  Among offenders arrested for public indecency – the peak age group was 30 to 34.

## Age at first sex offense resulting in a prison sentence

Seven hundred forty-six men (746) left prison in 2005 who had served at least one sentence for a sex offense in their past. Almost half (47%) had committed the offense as young men under the age of 25. Only 8% were over the age of 39 when they committed the crime that resulted in a prison sentence.

While most sentenced sex-offenders were sentenced to prison for their sex offenses as young men, the sentenced sex offenders who left prison in 2005 were significantly older. Only 20% percent of sex offenders who left prison in 2005 were younger than 25. There are two reasons for this disparity 1) men who commit serious sexual crimes generally receive long sentences, and 2) many offenders with a sex sentence history continue to return to prison for new, non-sexual crimes. Among the 746 offenders identified here, only 423 were completing a sentence for a sex crime when they were released in 2005.

Age at first sex offense resulting in a prison sentence and age at 2005 release, 746 sex offenders

|  | Age at first offense | Age at first offense, % | Age at 2005 release | Age at 2005 release, % |
|---|---|---|---|---|
| 10 to 14 | 9 | 1% | 0 | 0% |
| 15 to 19 | 182 | 24% | 24 | 3% |
| 20 to 24 | 164 | 22% | 125 | 17% |
| 25 to 29 | 106 | 14% | 89 | 12% |
| 30 to 34 | 106 | 14% | 81 | 11% |
| 35 to 39 | 77 | 10% | 120 | 16% |
| 40 to 44 | 47 | 6% | 129 | 17% |
| 45 to 49 | 23 | 3% | 90 | 12% |
| 50 to 54 | 12 | 2% | 38 | 5% |
| 55 to 59 | 9 | 1% | 24 | 3% |
| 60 to 64 | 4 | 1% | 11 | 1% |
| 65 and olde | 5 | 1% | 15 | 2% |
| No data | 2 | 0% |  | 0% |
|  | 746 | 100% | 746 | 100% |





40

## The Connecticut Risk Assessment Board

**Sec. 54-259a. Risk Assessment Board. Development and use of risk assessment scale. Report.** (a) There is established a Risk Assessment Board consisting of the Commissioner of Correction, the Commissioner of Mental Health and Addiction Services, the Commissioner of Public Safety, the Chief State's Attorney, the Chief Public Defender, the chairperson of the Board of Pardons and Paroles, the executive director of the Court Support Services Division of the Judicial Department and the chairpersons and ranking members of the joint standing committees of the General Assembly having cognizance of matters relating to the judiciary and public safety, or their designees, a victim advocate with experience working with sexual assault victims and sexual offenders appointed by the Governor, a forensic psychiatrist with experience in the treatment of sexual offenders appointed by the Governor and a person trained in the identification, assessment and treatment of sexual offenders appointed by the Governor.

(b) The board shall develop a risk assessment scale that assigns weights to various risk factors including, but not limited to, the seriousness of the offense, the offender's prior offense history, the offender's characteristics, the availability of community supports, whether the offender has indicated or credible evidence in the record indicates that the offender will reoffend if released into the community and whether the offender demonstrates a physical condition that minimizes the risk of reoffending, and specifies the risk level to which offenders with various risk assessment scores shall be assigned.

(c) The board shall use the risk assessment scale to assess the risk of reoffending of each person subject to registration under this chapter, including incarcerated offenders who are within one year of their estimated release date, and assign each such person a risk level of high, medium or low.

(d) The board shall use the risk assessment scale to determine which offenders should be prohibited from residing within one thousand feet of the real property comprising a public or private elementary or secondary school or a facility providing child day care services, as defined in section 19a-77.

(e) Not later than October 1, 2007, the board shall submit a report to the joint standing committee of the General Assembly on the judiciary in accordance with section 11-4a setting forth its findings and recommendations concerning: (1) Whether information about sexual offenders assigned a risk level of high, medium or low should be made available to the public through the Internet; (2) the types of information about sexual offenders that should be made available to the public through the Internet which may include, but not be limited to, (A) the name, residential address, physical description and photograph of the registrant, (B) the offense or offenses of which the registrant was convicted or found not guilty by reason of mental disease or defect that required registration under this chapter, (C) a brief description of the facts and circumstances of such offense or offenses, (D) the criminal record of the registrant with respect to any prior convictions or findings of not guilty by reason of mental disease or defect for the commission of an offense requiring

41

registration under this chapter, and (E) the name of the registrant's supervising correctional, probation or parole officer, and contact information for such officer; (3) whether any of the persons assigned a high risk level by the board pursuant to subsection (c) of this section meets the criteria for civil commitment pursuant to section 17a-498; (4) whether additional restrictions should be placed on persons subject to registration under this chapter such as curfews and intensive monitoring on certain holidays; (5) whether persons convicted of a sexual offense who pose a high risk of reoffending should be required to register under this chapter regardless of when they were convicted or released into the community; and (6) whether persons determined to be guilty with adjudication withheld in any other state or jurisdiction of any crime the essential elements of which are substantially the same as any of the crimes specified in subdivisions (2), (5) and (11) of section 54-250 should be required to register under this chapter.

## Special Management Unit – DOC Community Services Division

The Parole and Community Services Division's Special Management Unit (SMU) is responsible for the statewide supervision of approximately 225 paroled sex offenders. The unit employs a comprehensive multidisciplinary approach to manage this population with a mission to protect the public and increase the likelihood of successful reintegration for offenders requiring specialized supervision and treatment for problem sexual behavior. Since 2005, the unit has experienced a doubling of its supervised sex offender population, primarily due to a steady increase in special parole cases. In response, the unit's staffing levels were also doubled over the past five years from five parole officers to the current compliment of ten.

These specially trained parole officers collaborate closely with key stakeholders to form supervision teams to advance collective public safety goals. These stakeholders include sex offender treatment providers and polygraph examiners from The Connection Inc., Center for the Treatment of Problem Sexual Behavior; victim advocates from Connecticut Sexual Assault Crisis Services; state police from the Connecticut State Police Sex Offender Registry Unit and Computer Crime Unit; and local law enforcement responsible for matters relating to registered sex offenders and sexual assault investigations.

The specialized techniques and interventions utilized by SMU include the use of validated sex offender risk assessments; individualized case management plans; offense specific cognitive-behavioral sex offender treatment; intensive supervision strategies including frequent compliance checks, search and seizure, GPS monitoring, and surveillance; toxicology testing; registration and notification; victim advocacy; computer monitoring and computer forensic examinations.

SMU officers routinely conduct compliance checks with local law enforcement in jurisdictions throughout the state to monitor adherence to sex offender registration requirements, parole conditions, and sex offender treatment restrictions. Parole officers and police visit sex offenders at

their residence and place of employment. During these compliance checks, SMU officers assess offenders for the presence or absence of dynamic risk factors related to sexual offending.

Cognitive-behavioral sex offender treatment is an empirically validated intervention required of the offenders supervised by SMU. This approach has been shown to produce favorable reductions in sexual and general recidivism when combined with parole supervision. Groups are held in numerous locations throughout the state including district parole offices in Hartford, New Haven, Waterbury, and Bridgeport.

SMU's intensive supervision model includes monitoring an average of 90 sex offenders with Global Positioning System (GPS) technology. Active GPS units are used exclusively to enhance supervision and afford parole officers the ability locate offenders in a timely manner. GPS tracking information is routinely shared with law enforcement for investigations.

Stable housing is recognized by SMU as critical to the successful reintegration of sex offenders. Housing instability has been widely shown to increase general and sexual recidivism. While the placement of sex offenders remains a constant challenge for this unit, no sex offenders have been placed in homeless shelters in the past five years while under SMU supervision.


## The Collaborative Model in Connecticut

Connecticut has become a national leader in developing and implementing a systemic, collaborative approach to the management and treatment sexual offenders in the community. This approach links state supervising agencies (CSSD's Office of Adult Probation and DOC's Office of Parole), victim advocates (CONNSACS) and a non-profit provider of sex offender treatment and programming (The Connection, Inc.) in the design and oversight of a supervision plan for each offender.

The primary parties in this collaborative approach include: the supervising officer, the evaluator/treatment provider, a polygraph examiner and a victim advocate. Each of the party brings unique expertise and perspective to the collaboration, which greatly helps enhance offender supervision and community safety.

**Supervising Officers:** Probation and Parole officers have special training and experience in supervising sexual offenders. Some of their roles include regular office and field visits, social support meetings, employment and residency approvals, monitoring compliance with sex offender registry and imposing of alternative sanctions when needed.

**Evaluator/Therapist:** The evaluators provide risk assessments using the most advanced risk assessment tools and protocols. This information is then used by the treatment providers to decide on the intervention that will address the risk factors specific to each client.

**Polygraph Examiners:** Polygraph examiners are trained in Post Conviction Sex Offender Testing (PCSOT). The typical sexual offender receives a minimum of one polygraph every six months in one of the three types of exams, which include: 1) Sexual Offense History; 2) Denial of convicted sexual crime; and 3) Compliance with supervision standards (called a Maintenance exam).

43

**Victim Advocates:**  Victim Advocates provide beneficial information to the victim and victim's family.  Some examples include: notification and support services to victims when offenders are released onto parole and/or probation and appropriate referrals for services for victims and offender family members.

While it is the sole authority of the supervising officer to make decisions regarding housing placement, offender employment, appropriate social contacts, etc., each team member contributes information that contributes to the decision making process.

# Glossary

**CMHC** – Correctional Managed Health Care, the CT DOC contracts with the University of Connecticut to provide health service for its prisoners.  For over a decade CMHC has provided sex-offenders treatment and assessment services in Connecticut's prisons.

**The Connection** – The Connection, Inc. is a Connecticut non-profit organization that provides a wide range of programs and services in the state.  The agency provides assessments, treatment and programs for sex offenders under the supervision of the offices of adult probation and parole.

**CONNSACS** – Acronym for Connecticut Sexual Assault Crisis Services, a statewide coalition of individual sexual assault crisis programs.  In addition to providing victim assistance, community education and public policy advocacy, CONNSACS works closely with the offices of Parole and Probation to insure the voice of the victim is present in issues relating to sex offenders in the state.

**Discharge from prison** – Prisoners "discharge" from prison at the completion of their prison sentence.  Prisoners who leave prison but remain under the supervision of Department of Correction, in a community program, are said to have been released.

**EOS** – Acronym for end-of-sentence.  Prisoners who reach the end of their sentences are discharged.

**Paraphilias** – Conditions where an individual becomes sexually aroused or gratified by fantasizing about or engaging in behavior that is atypical or extreme.  Common paraphilias include exhibitionism, fetishism, frotteurism and necrophilia.  In the past paraphilias were referred to as perversions.

**Parole** – Parole is a discretionary release program available to most prisoners serving sentences greater than two years.  Depending on the crime, parole-eligible offenders must serve at least 50% or, in the case of a violent offense, 85% of their sentence.  Perspective parolee cases are considered by three-member panels conducted by the Board of Pardons and Parole.  Offenders on parole are supervised by parole officers who have the authority remand them to prison for violating the conditions of their release.

**Probation** – Probation is a court-mandated and court-supervised form of community supervision for offenders.  An offender may be sentenced to a term of probation in lieu of a prison sentence or the court may order a split-sentence, which involves a term of incarceration followed by a period of probation.  Unlike parole officers, probation officers are required to return the offender to court before a probationer can be remanded to prison.  Violation of Probation (53a-032) is the most common charge among prisoners incarcerated in the state's prisons.

**Public indecency (Sec. 53a-186: Class B misdemeanor)** A person is guilty of public indecency when he performs any of the following acts in a public place:
1. An act of sexual intercourse as defined in subdivision (2) of section 53a-65; or
2. a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person; or

45

3. a lewd fondling or caress of the body of another person. For the purposes of this section, "public place" means any place where the conduct may reasonably be expected to be viewed by others.

**Recidivism** – for the purposes of this study, four general measures of recidivism will be considered: 1) new arrests 2) new convictions 3) any reincarceration, and 4) returns to prison with a new prison sentence. For arrests, convictions and new prison sentences, separate recidivism rates will be considered for any new offenses, VOP-related offenders, SOR-related offenses, and new sex offenses.

**Release from prison** – Prisoners who leave prison but remain under the supervision of Department of Correction, in a community program, are said to have been released. Prisoners who have completed their prison sentences are said to have discharged.

**Remand** – Offenders who are completing their prison sentences in the community, under the supervision of the DOC Parole Division, are required to abide by a variety of general and specific conditions governing their community release. Violation of these conditions can result in an immediate return to prison, potentially, until the end of the offender's prison sentence. Offenders who are returned t prison in this way are said to be remanded.

**Injury or risk of injury to, or impairing morals of, children. Sale of children ( Sec. 53-21.)** Any person who

1. willfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or
2. has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, or
3. permanently transfers the legal or physical custody of a child under the age of sixteen years to another person for money or other valuable consideration or acquires or receives the legal or physical custody of a child under the age of sixteen years from another person upon payment of money or other valuable consideration to such other person or a third person, except in connection with an adoption proceeding that complies with the provisions of chapter 803, shall be guilty of a class C felony for a violation of subdivision (1) or (3) of this subsection and a class B felony for a violation of subdivision (2) of this subsection In the criminal justice system, the Risk of Injury charge has two parts: one (Subsection 2) contains a sexual criminal component. Persons convicted on for subsection 2 are required to register with the Sex Offender Registry. In DOC data systems, subsection 2 of this statute is coded as 53-021* - Injury or Risk of Injury to Minor.

**Sexual assault in the first degree (Sec. 53a-70: Class B felony)** A person is guilty of sexual assault in the first degree when such person

1. compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or

46

against a third person which reasonably causes such person to fear physical injury to such person or a third person, or

2. engages in sexual intercourse with another person and such other person is under 13 years of age and the actor is more than two years older than such person, or

3. commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present, or

4. engages in sexual intercourse with another person and such other person is mentally incapacitated to the extent that such other person is unable to consent to such sexual intercourse.

**Sexual assault in the second degree (Sec. 53a-71: Class C felony)** A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and:

1. Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person; or

2. such other person is mentally defective to the extent that such other person is unable to consent to such sexual intercourse; or

3. such other person is physically helpless; or

4. such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare; or

5. such other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or

6. the actor is a psychotherapist and such other person is (A) a patient of the actor and the sexual intercourse occurs during the psychotherapy session, (B) a patient or former patient of the actor and such patient or former patient is emotionally dependent upon the actor, or (C) a patient or former patient of the actor and the sexual intercourse occurs by means of therapeutic deception; or

7. the actor accomplishes the sexual intercourse by means of false representation that the sexual intercourse is for a bona fide medical purpose by a health care professional; or

8. the actor is a school employee and such other person is a student enrolled in a school in which the actor works or a school under the jurisdiction of the local or regional board of education which employs the actor.

**Sexual assault in the third degree (Sec. 53a-72a: Class D felony)** A person is guilty of sexual assault in the third degree when such person

1. compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person, or

2. engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21.

**Sexual assault in the fourth degree (Sec. 53a-73a.: Class A misdemeanor)** A person is guilty of sexual assault in the fourth degree when:

1. Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general

supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or

2.  such person subjects another person to sexual contact without such other person's consent; or

3.  such person engages in sexual contact with an animal or dead body; or

4.  such person is a psychotherapist and subjects another person to sexual contact who is (A) a patient of the actor and the sexual contact occurs during the psychotherapy session, or (B) a patient or former patient of the actor and such patient or former patient is emotionally dependent upon the actor, or (C) a patient or former patient of the actor and the sexual contact occurs by means of therapeutic deception; or

5.  such person subjects another person to sexual contact and accomplishes the sexual contact by means of false representation that the sexual contact is for a bona fide medical purpose by a health care professional; or such person is a school employee and subjects another person to sexual contact who is a student enrolled in a school in which the actor works or a school under the jurisdiction of the local or regional board of education which employs the actor.

**Sex crimes statutes in CT** – Descriptions of state criminal statutes and jury instructions for sex crimes are available on the Judicial Branch website at: *http://jud.ct.gov/ji/Criminal/part7/Default.htm*

**SOR - Sex Offender Registry** - The Department of Emergency Services & Public Protection maintains the internet-based registry.  Offenders are required to register with the State Police if they have been convicted for offenses identified by the CT Legislature.  More information on CT's SOR is available on-line at: *http://www.ct.gov/dps/cwp/view.asp?Q=471430&A=11*

**Sex Treatment Scores** - The DOC assigns a sex treatment score to each sentenced prisoner in the system.  Scores range from 1 to 5.  Sex treatment scores were developed to assist the DOC in managing offenders while they are incarcerated.  Scores are based on the offender's sexual criminal history including conviction records, police reports, pre-sentence investigation reports and DOC sources.  The scores are not intended for use as diagnostic scores.  For a full explanation of DOC Sex treatment Scores can be viewed on page 35 of the DOC Classification Manual available on-line at the CT DOC website.

**Sex Treatment Score: S1** – A sex treatment score of S1 means that the offender has no current conviction, pending charges or identified history of sexual offenses.

**Sex Treatment Score: S2** – Offender has a current conviction, pending charges or a known history of non-contact sexual offenses.  These behaviors may include: exhibitionism; use, sale or possession of child pornography; promoting the prostitution of a minor, obscene telephone calling, voyeurism, or other paraphilias.

**Sex Treatment Score: S3** – Offender has a current conviction, pending charges or a known history of sexual offenses involving physical contact with the victim.  Offenses may include coercion, manipulation and exploitation.  An inmate who engages in predatory sexual behavior while incarcerated will be given a score of S3.

**Sex Treatment Score: S4** – Offender has a current conviction, pending charges or a known history of two or more sexual offenses involving physical contact.  This score is assigned to offenders who have perpetrated two or more assaults on two or more victims.  Physical violence may or may not have played a role in the sexual assaults.

**Sex Treatment Score: S5** – Offender has a current conviction, pending charges or a known history of a contact sexual offenses involving gratuitous or sadistic violence.  An offender may also be classified with an S-5 score based on a clinical assessment using the HARE Psychopathy Scale.

**SMU** – Sex Offender Management Unit at the DOC Office of Parole and Community Services oversees the supervision of sex offenders who are released to parole in the state.  SMU parole officers have reduced caseloads that allow for enhanced oversight.

**Static-99** – is a 10-item actuarial assessment instrument that is widely used to assess risk among adult male sex-offenders.  As a static assessment instrument offender scores do not change significantly over time.  Dynamic assessment tools are critical in monitoring changes in the specific factors that may drive criminal behavior.

**TS** – An acronym for Transitional Supervision, a discretionary community supervision program for offenders serving sentences of two years or less.  A TS-eligible offender can be released from prison after completing 50% of their sentence if they have an approved sponsor and an appropriate residence to return to.

**VOP** – Violation of probation (See Probation)

49